## Miller, Appellant, v. Keystone Appliances, Inc. et al.

Argued October 26, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Roy M. Bowman,* for appellant.

*Eugene D. Siegrist,* for appellee.

OPINION BY RHODES, J., November 22, 1938:

The appeal in this workmen's compensation case presents the question whether deceased was in the course of his employment when he received the injuries which resulted in his death. After a hearing the referee made an award which was affirmed by the Workmen's Compensation Board. On appeal to the court below the award was set aside, and judgment entered for defendant. Claimant has appealed.

Deceased was injured as the result of a collision between his automobile and a bus, near Jonestown, Pa., on August 26, 1935, at 9:50 P.M., and died two days later. At the time of the accident he was operating his automobile, accompanied by his wife, and was returning to their home near Lebanon from a picnic given

by his employer, Keystone Appliances, Inc., the defendant, at Twin Grove Park, about 16 miles from Lebanon. He arrived at the picnic about 1:30 P.M., remained all afternoon, and left shortly after 9:00 P.M. At the time of the accident he was on a direct road to his home.

Deceased was employed by defendant as a salesman, and was paid on a commission basis, receiving no salary. Defendant furnished no automobiles for the transportation of its salesmen in their work, and those who used their own cars, including deceased, were not allowed mileage. Deceased was also employed as an assistant mail carrier in the city of Lebanon, and had delivered mail on the morning preceding the picnic. The referee found "that the picnic was for the purpose of having the employees get together, have a good time, become better acquainted and to have better cooperation in the work of the defendant company." This finding is amply supported by the evidence. Defendant, through its sales promotion department, arranged for the facilities at the park, purchased and distributed free to those attending the picnic tickets for the various amusements and refreshments. The offices of defendant were closed on the day of the picnic, and there was no deduction made from the wages of those who were paid on a salary basis for the time so lost. A program of sports and entertainment was arranged, deceased being appointed captain of one of the baseball teams. The entertainment was in charge of the sales promotion manager and the general retail sales manager, and consisted of an amateur show, beauty contest, and similar features, all the talent being taken from defendant's organization. Defendant furnished no transportation to the picnic grounds, and the method of reaching there seems to have been left to the discretion of the individual employee. At the conclusion of the entertainment in the evening, the president of defendant company, L. H. Miller, was introduced and gave an ad-

dress in which he outlined the nature of the salesmen's work, asked for cooperation, and expressed his hopes for the future. Notices relating to the picnic were mailed from the office of the company at Harrisburg, which was the general office where the secretary-treasurer and retail sales manager were located. The salesmen received bulletins from the sales promotion manager telling of the picnic, and outlining the activities scheduled for the day. The manager of the Lebanon branch, with which deceased was connected, testified that "the purpose of the meeting was just the formal address—I guess to get acquainted with all the employees and the families." A fellow employee of deceased testified: "Q. What was the purpose of this meeting? A. Well, I would say it was in the form of a picnic, to more or less get together, everybody, all the employees to get together and get acquainted with each other, and to create—naturally to create as much enthusiasm as possible so that after the meeting was over they would go back to their jobs willing to work that much harder." Claimant described the affair as a "picnic in connection with a get-together meeting."

Whether deceased was in the course of his employment when he was injured is a question of law. *Healey v. Hudson Coal Co.,* 130 Pa. Superior Ct. 462, 198 A. 684. But in determining that question we must bear in mind the liberal construction that this term has received in the courts, and the exclusive function of the compensation authorities to find facts, whether from direct or circumstantial evidence, and the inferences therefrom. *Dunphy v. Augustinian College of Villanova et al.,* 129 Pa. Superior Ct. 262, 195 A. 782. Because the injury did not occur on the premises of the employer, it was incumbent upon claimant to show that it was sustained while deceased was "actually engaged in the furtherance of the business or affairs of the employer." The Workmen's Compensation Act of June 2, 1915,

P. L. 736, Art. 3, §301, 77 PS §411; *Baumann v. Howard J. Ehmke Co. et al.*, 126 Pa. Superior Ct. 108, 190 A. 343.

The instant case must be distinguished from those where the employee was injured after leaving the premises of the employer. Here deceased was enroute to his home from a place to which he had gone to carry out what was, in effect, a special mission or errand for his employer, and precedents are not lacking to support the proposition that under such circumstances he was in the course of his employment until he returned to his home. In *Messer v. Manufacturers' Light & Heat Co.*, 263 Pa. 5, 106 A. 85, deceased was killed as the result of an automobile accident which occurred during his vacation, but while in the pay and subject to the call of his employer. At the request of the defendant company's superintendent he went to inspect a pumping station about 18 miles distant, for the purpose of increasing his efficiency as an employee. In entering judgment for claimant, reversing the court below, the Supreme Court said, at page 9: "His compliance with this request continued from the time he left his home until he finally returned, and the fact that he was prevented from actually carrying out his purpose to go on his way to the Brave Pump Station did not alter his legal status. The test to be applied is, did he go upon this mission voluntarily or because of the request of his superintendent. The referee finds that he went not only at the request of the superintendent, but in pursuance of the policy which the company followed with all its employees. He was therefore practically under orders and in the performance of his duty when he was injured."

In *Cymbor v. Binder Coal Co. et al.*, 285 Pa. 440, 132 A. 363, deceased was an electrician in defendant's mine, who, in addition to his regular duties, was required to return to the mine at night to start the pumps. For

this he received extra compensation, keeping his own time. It took but a moment to start the pumps, the real time was in going to and from the mine. The Supreme Court reversed the court below, and directed judgment to be entered in favor of claimant, saying, at page 442: "In the instant case, the nightly trip to the mine was in furtherance of the master's business to do an errand for the master and he was properly on the latter's time, not merely at the moment of starting the pumps, but going and coming as well."

Many of the cases are discussed by STADTFELD, J., speaking for this court, in *Kelly v. Ochiltree Electric Co. et al.*, 125 Pa. Superior Ct. 161, 190 A. 166, which we consider as governing the case at bar. It may be true, as defendant argues, that there was greater elaboration of proof in the Kelly case, but we view that difference as one of degree, at best, and not one of principle.

In the present case, as in the Kelly case, deceased was returning from a function having both business and social aspects, which he had attended at the instance of his employer. While the referee in the case at bar found that "all employees received notice of this picnic but attendance was not compulsory," nevertheless he also found that "J. P. Baumgardner, manager of the Lebanon branch of the defendant company, told the employees of the Lebanon branch, including the decedent, that he wanted them to be at the picnic." Baumgardner, who was deceased's immediate superior, testified: "Q. Did you tell them they were supposed to be there? A. I said I wanted them to be there. ...... Q. Were all of your salesmen there? A. Yes, sir; according to my records they were all there. Q. How about the salesmen from the Harrisburg Store? A. That I couldn't tell you. I have no check-up as to that. ...... Q. Do you remember in what manner, by what words, you extended that invitation? A. I said I want them all to be here, and I sure would appreciate it, and that is the

reason I stated I wanted them all there. ...... A. In regard to the business, I thought it would look better to have all the salesmen there represented. ...... Q. You said it wasn't compulsory, but you told your salesmen that you wanted them all to be there? A. Yes, I did do that."

Claimant also testified: "Q. How did you register when you arrived there [at the picnic], Mrs. Miller? A. They had a place there at the tables, where you gave your name, and they presented you with tickets."

Between January, 1935, and the date of his death deceased had earned $1,045.35 in commissions as the result of his work for defendant, and it is natural to assume that he would wish to avoid anything that might jeopardize what appears to have been a remunerative connection.

Clearly, deceased was directed to attend the picnic by his superior officer, who personally ascertained the number of his salesmen attending the picnic in addition to the check that might have been furnished by the registration to which claimant referred. The fact that deceased was not paid for attending the picnic, although other employees who received a salary were paid, is of no significance, because deceased was compensated on a commission basis, and never received anything unless he made a sale. Defendant also refers to the fact that deceased was not paid for the use of his automobile on that day, whereas in the Kelly case transportation was furnished. The park where the picnic was held was about 16 miles from the city of Lebanon where the deceased lived. The trip in the Kelly case was from Pittsburgh to Florida, and had the employee been required to pay the expense thereof his attendance at the convention might well have been more of a hardship than a reward.

The importance of sustaining the morale of any organization cannot be ignored, and this is often best

achieved by such social events, which result in the personnel becoming better acquainted and more interested in their work, and serve as a background for inspirational addresses. The fact-finding bodies have said that such was the purpose of the picnic in the case at bar, which deceased was told to attend, and we cannot say that the evidence does not afford any basis for the inferences. The conclusion that deceased was in the course of his employment when injured properly followed from the facts found.

The judgment of the court below is reversed, and the record is remitted that judgment may be entered on the award in favor of claimant and against defendant.