JACK LEROY LINDERMAN et al., by their mother and next friend, Appellees, v. COWNIE FURS et al., Appellants.

No. 46445.

APRIL 4, 1944.

Miller, Huebner & Miller, of Des Moines, for appellants.

Herrick, Sloan & Langdon and Ted Sloane, all of Des Moines, for appellees.

MULRONEY, J.—The application in arbitration filed by the widow of Roy C. Linderman in behalf of herself and two minor children alleged that her husband had sustained a personal injury arising out of and in the course of his employment and asked that an order be made granting her workmen's-compensation benefits. The employer and its insurer denied liability, primarily on the ground that Linderman's death was not due to a personal injury arising out of and in the course of his employment. The arbitrator rendered an award in claimant' favor, which was sustained by the commissioner. The appeal to the district court of Howard county resulted in a judgment affirming the decision of the commissioner.

It appears of record that Linderman, a salesman for Cownie Furs, lost his life by drowning in the waters of Lake Vermillion, in the state of Minnesota, on Memorial Day, May 30, 1941. Upon this appeal the employer assigns error in the holding "that the drowning of Roy C. Linderman * * * arose out of and in the course of his employment * * *."

The record shows that Linderman had been a salesman for the Cownie Fur Company for several years prior to his death. The Cownie Fur Company is a corporation with its principal place of business in Des Moines, but there are branches located in four other Iowa towns. The salesmen sell fur wearing apparel at various points in Iowa and obtain from customers fur wearing apparel for storage and repair purposes. The pick-up · business for storage and repairs starts around the first of April and ends around the last of May each year.

During the years 1938, 1939, and 1940 the sales manager arranged contests between the salesmen engaged in the pick-up for storage work. The Cownie Fur Company owned a cabin on Pine Island in Lake Vermillion and the reward for the contest winners was a fishing trip to this cabin at the company's expense. The fishing trip was always at the close of the pick-up season, or the last of May or first part of June. In 1939 the contest was called the "On to Vermillion" contest. During the period of the contests the company mailed daily progress reports to the contestants, but some men who did not make their quotas went on the trip. The company officials at first testified the 1941 fishing trip was not a part of any planned sales contest, but when the trial before the arbitrator was reopened and the sales manager was confronted with letters he had written to a salesman exhorting him to greater efforts if he wanted to go on the fishing trip, this defense disappeared.

The group that went on the 1941 fishing trip left Des Moines on the afternoon of May 29th in two company-owned cars. Linderman drove one of the cars and the sales manager the other one. They arrived at Grueben's Point on the shore of Lake Vermillion at about six o'clock the next morning. They were taken to Pine Island in a launch. The men rowed and fished, and that afternoon Linderman and four other salesmen

were in a motorboat that was being operated by the sales manager, Mr. Thompson. While they were proceeding toward the shore of another island where they intended to fish, the boat sank and Linderman was drowned.

It is undisputed that the company paid all expenses, including meals and transportation in the cars and launch, and the company provided the motorboat. Mr. Cownie frankly testified he regarded these fishing trips as a "benefit both to the employees and the corporation."

I. A personal injury arises out of and in the course of employment when it occurs "in places where their employer's business requires their [employees'] presence and subjects them to dangers incident to the business." Section 1421 (6), Code, 1939. Claimant contended that the Lake Vermillion fishing trip was an established part of the company's business, instituted and carried on as a means of stimulating sales effort and improving sales ability. The commissioner held as a finding of fact:

"* * * that the Lake Vermillion trip in question as other like trips before, including entertainments, were arranged and paid for by defendant Fur Company for business purposes and thereby became an integral part of the Fur Company's business. It follows that the fatal injury in question was due to a personal injury sustained by Roy C. Linderman arising out of and in the course of the employment as an employee of the defendant Fur Company."

We think there was sufficient competent evidence to sustain the commissioner's finding. Of course, the ultimate end of all sales contests is to promote sales. The argument that the salesman was not compelled to accept the invitation to go on the trip and therefore was not in a place where he was "required" to be within the meaning of the act is not persuasive. We must look to the purpose and nature of the trip to determine whether the salesman was "required" to go. "Required," as used in the statute, does not mean only an act in response to a command. It is sufficient if the act is in response to the company's bidding or in any manner dictated by the course of employment to further the employer's business. We held, in Fintzel v. Stoddard Trac. & Equip. Co., 219 Iowa 1263, 1268, 260 N. W. 725, 727,

that a salesman who was shot while pheasant hunting with a customer's son was in the course of his employment. We there stated:

"The course of his employment, the duties which he had to perform, the purpose which he hoped to achieve, may properly have united with the direction of his employer, who was with him, and required that he enthusiastically and gratefully avail himself of this form of entertainment which the customer had so generously proffered."

Here the contest was designed to promote sales. The salesmen were pursuing their master's business when they entered into the contest and tried to make it a success. The entire scheme was of intended benefit to the employer. Each employee was in the performance of an act incident to his employment and recognized as of value by the employer in connection with sales of its merchandise and service when he went on the fishing trip. To spurn the invitation might not only reflect on the salesman's loyalty but jeopardize the whole scheme, which admittedly was instituted by the employer's sales manager to increase sales.

In Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 325, 5 N. W. 2d 619, 623, we held the secretary of a convention bureau, who accepted an invitation for a motorboat ride on the Mississippi and was drowned, was acting within the scope of his employment, stating:

"And there was evidence in the instant case to show that if Danico thought he would advance the interests of his employer by accepting the invitation to the boat ride, he would then be acting within the scope of his employment and it would be his duty to go."

In Miller v. Keystone Appliances, 133 Pa. Super. 354, 360, 2 A. 2d 508, 510, it was held the death of a commission salesman was compensable where the evidence showed he was killed in an automobile accident while returning home in his own car from a company picnic. There the referee found, "that the picnic was for the purpose of having the employees get together, have a good time, become better acquainted and to have better cooperation in the work of the defendant company." After con-

cluding that the finding was supported by the evidence, the court stated:

"The importance of sustaining the morale of any organization cannot be ignored, and this is often best achieved by such social events, which result in the personnel becoming better acquainted and more interested in their work, and serve as a background for inspirational addresses. The fact-finding bodies have said that such was the purpose of the picnic in the case at bar, which deceased was told to attend, and we cannot say that the evidence does not afford any basis for the inferences. The conclusion that deceased was in the course of his employment when injured properly followed from the facts found."

In Kelly v. Ochiltree Electric Co., 125 Pa. Super. 161, 190 A. 166, the salesman became a member of the Toppers Club, which was an employer-organized club with membership limited to those who attained a certain volume of sales. A reward for attaining membership in the club was a convention trip. When a salesman member of the club was killed while returning from the convention it was held his death was compensable. See, also, Scott v. Whitehouse & Co., 255 App. Div. 733, 6 N. Y. S. 2d 916. In Fagan v. Albany Evening Union Co., 261 App. Div. 861, 24 N. Y. S. 2d 779, 780, the court held the death of a newspaper carrier when he was drowned while attending a carriers' picnic was compensable, the court stating:

"It is obvious that the picnic was one of the activities maintained by the employer for the purpose of developing better service and greater interest on the part of the newspaper carriers and for its own ultimate benefit."

We need not review the many decisions cited by claimant and employer on somewhat similar fact situations. Employer cites Christensen v. Hauff Bros., 193 Iowa 1084, 188 N. W. 851; Walker v. Speeder Mach. Corp., 213 Iowa 1134, 240 N. W. 725; Kraft v. West Hotel Co., 193 Iowa 1288, 188 N. W. 870, 31 A. L. R. 1245; F. Becker Asphaltum Roofing Co. v. Industrial Comm., 333 Ill. 340, 164 N. E. 668; Ryan v. State Ind. Comm., 128 Okla. 25, 261 P. 181; Hildebrand v. McDowell Furniture Co., 212 N. C. 100, 193 S. E. 294; Porowski v. American Can Co., 15

N. J. Misc. 316, 191 A. 296; Clark v. Chrysler Corp., 276 Mich. 24, 267 N. W. 589; Industrial Commission v. Murphy, 102 Colo. 59, 76 P. 2d 741, 115 A. L. R. 990; McManus's Case, 289 Mass. 65, 193 N. E. 732; Lehman v. B. F. Nelson Mfg. Co., 193 Minn. 462, 258 N. W. 821. Claimant cites Mann v. Board of Education, 266 Mich. 271, 253 N. W. 294; Conklin v. Kansas City Pub. Serv. Co., 226 Mo. App. 309, 41 S. W. 2d 608; Piusinski v. Transit Valley Country Club, 259 App. Div. 765, 18 N. Y. S. 2d 316 [affirmed 283 N. Y. 674, 28 N. E. 2d 401]; Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 P. 372, 6 A. L. R. 1145; Stakonis v. United Adv. Co., 110 Conn. 384, 148 A. 334; Huber v. Eagle Stationery Corp., 254 App. Div. 788, 4 N. Y. S. 2d 272; Kingsport Silk Mills v. Cox, 161 Tenn. 470, 33 S. W. 2d 90; Stockley v. School Dist., 231 Mich. 523, 204 N. W. 715; Holst v. New York Stock Exchange, 252 App. Div. 233, 299 N. Y. Supp. 255.

There is some conflict in the holdings of the different courts, but it is significant that none of the cases cited by the employer involves salesmen. In the Fintzel case, supra, we commented on the salesman's calling as one that demands somewhat special obligation. There we said, at page 1267 of 219 Iowa, page 726 of 260 N. W.:

"Particular sales of highly competitive articles probably result more from the skill of the salesman than the merit of the product. Such articles are usually so near alike as to quality and price, that the personality of the salesman may be the deciding factor. Successful salesmanship requires proficiency in many arts. A successful salesman must be a good listener as well as a good talker. He must be able to accept as well as give. He must be a grateful guest as well as a generous host."

Nor are the other Iowa cases in point as support for employer's contention. In Kraft v. West Hotel Co., supra, the injury occurred while claimant was dressing her hair after her day's work. This was no part of her employment services. In Walker v. Speeder Mach. Corp., supra, the employee was sent to Pittsburgh at the employer's expense for meals and lodging, and we held his injury when struck by an automobile as he was crossing a street in Pittsburgh on his way to a restaurant for

dinner was compensable. In the course of the opinion, Justice Grimm said, by way of illustration, that if the employee had sustained the injuries while crossing the street to attend a theater he could not recover. But the theater trip would be for his own exclusive entertainment and no part of his employment and it would not have been paid for by the employer.

A good statement of the test to be applied is contained in a case where compensation was denied. See Smith v. Seamless Rubber Co., 111 Conn. 365, 368, 150 A. 110, 111, 69 A. L. R. 856, where the court stated:

"Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable. If the act is one for the benefit of the employer or for the mutual benefit of both an injury arising out of it will usually be compensable; on the other hand, if the act being performed is for the exclusive benefit of the employee so that it is a personal privilege or is one which the employer permits the employee to undertake for the benefit of some other person or for some cause apart from his own interests, an injury arising out of it will not be compensable."

The employer in the case at bar is a profit corporation. There was evidence to warrant a finding that the Vermillion fishing trip was a part of its business enterprise, designed to stimulate its employees to greater efforts, to the end that sales and profits be increased. Such evidence sustains the commissioner's finding. The judgment of the trial court is affirmed.—Affirmed.

SMITH, C. J., and BLISS, GARFIELD, OLIVER, HALE, MANTZ, and WENNERSTRUM, JJ., concur.

MILLER, J., takes no part.