SAVOY, Judge.
Plaintiff, widow of Joseph Clifford Cour-ville, filed this suit individually and for the benefit of Courville’s four minor children, for death benefits under the Workmen’s Compensation Act, penalties and attorney’s fees. It is alleged that Courville, who was the meat market manager employed at defendant’s retail store on Ryan Street in Lake Charles, Louisiana, was killed in an automobile accident while returning from a company sponsored function in Lafayette, Louisiana; and that his death arose out of and in the course of his employment with defendant. National Food Stores of Louisiana, Inc. filed an answer generally denying the allegations of plaintiff’s petition.
After a trial on the merits, the district court rendered judgment for defendant, and plaintiff has appealed to this Court.
The issue before us is whether or not Courville’s death arose out of and in the course of his employment with National Food Stores of Louisiana, Inc.
Plaintiff maintains that the part played by the district supervisor or manager, Chester Lantier, in having a going-away party for the outgoing district supervisor, Frank Brown, was sufficient to make the party a part of the defendant’s business and part of the service of its employees. Under the circumstances, it is contended that the personal invitation by Chester Lantier, extended to Courville and the other employees of defendant, to attend this party, constituted a sufficient degree of compulsion to attend so as to bring the going-away party and the trip there and return trip therefrom, within the orbit of Courville’s employment. It is maintained that the defendant had fostered such parties which were designed to promote the morale and goodwill of its employees and served the purposes of strengthening the' entire organizational fabric by assuring its-employees that there would be no changes, and a continuity in operations. Accordingly, it is urged that the going-away party was impliedly sanctioned by the defendant,, whose best interests were served by sponsoring it, and therefore Courville’s death arose out of and in the course of his employment with defendant.
The defendant maintains that the district court was correct in its findings that the-going-away party was not a function sponsored by the defendant, did not involve-any phase of the defendant’s business,, which was the operation of food stores,, and that the necessities of the defendant’s, business did not reasonably require Cour-ville to be at the place of the accident at the time the accident occurred. It is urged that the district court correctly determined' that the evidence established no compulsion or obligation upon Courville, or the-other employees of defendant, to attend the-party, which was primarily a party given-by Courville and the others for a fellow-employee who was leaving the district in which they all had been employed.
The record reveals that Joseph Clifford' Courville was killed in an automobile-accident on U. S. Highway 90 near Scott, Louisiana, at approximately 12:05 A.M.. on October 27, 1963. For a period of time before his death Courville had been employed as a meat market manager at defendant’s retail store No. 33 on Ryan* Street, in Lake Charles, Louisiana. This, store was one of eleven stores owned by-defendant comprising its district No. 3,. *253 which was under the supervision of a district manager or supervisor, who maintained an office in store No. 30 in Lafayette, Louisiana. The store manager and meat market manager have equal authority over their respective part of the store, hire and fire the personnel in their department, and are answerable only to the district manager. The district manager has the responsibility of supervising the stores in his district, carrying directives or orders to these stores, inspecting the displays, freshness of produce, takes the local ac-countings from the stores, and, in general, determining that company policies are followed. He generally visits each store in the district weekly. In general, he has no authority to hire or fire employees, but makes recommendations for the hiring and firing of store managers and meat market managers, and makes recommendations about promotions or transfers in the district, or the like. Under certain circumstances, he has the right to fire store managers or meat market managers, or other employees, for cause. He had no authority or function to process any insurance claims, but only assisted in obtaining the necessary information and forms, and referring them to the defendant’s New Orleans office, from where they were ultimately forwarded to the insurance department of the defendant in Chicago for a final decision.
Approximately two weeks before the accident in the instant case, Frank Brown, Sr., who had been the district manager for about seven years, and Chester Lantier, who had been a store manager in Lafayette for a period of eight years, were called into the defendant’s office in New Orleans. Brown accepted a special assignment with defendant, and Lantier was offered and accepted a promotion to district manager. Brown and Lantier then visited most of the stores in the district, after which Brown left for New Orleans for a few days, and Lantier officially assumed the position of district manager approximately October 20, 1963.
After learning that Brown would be back to Lafayette on Saturday, October 26, 1963, where Brown still maintained his home, Lantier planned a going-away party for Brown for that Saturday night. On the Friday before and morning of the party, Lantier phoned each store in his district and invited the store managers, meat market managers, assistant managers, produce managers and journeyman butchers to attend the going-away party to be held in the warehouse of one of the company stores in Lafayette. In most instances, Lantier talked with the store manager of each store who passed the invitation along to the other key personnel of the store. He had been unsuccessful in an attempt to obtain a Knight of Columbus hall or other facilities because of shortness of notice. The wives of the invitees were included, and each invitee was requested, if willing, to contribute to the expenses of the refreshments and the gift to be presented to Brown. The store managers were asked to contribute $5.00, the market managers $3.00, and the other employees, each $2.00. The party was planned as a surprise for Brown.
Approximately 34 of 48 invited employees attended the party, arriving between 7:30 P.M. and 9:00 P.M., and departing between 11:00 P.M. and 12:00 P.M. After everyone had arrived at the party, Lantier obtained everyone’s attention and presented a gift to Brown. The presentation to Brown, and his acknowledgement of the gift, constituted the only program of the evening. There were cold cuts and refreshments served at the party. The gift to Brown and cold cuts were paid for from' the money contributed by those who attended the party. The cost of the beverages served, approximately $35.00, was. paid from a coffee fund maintained by the employees at the warehouse in Lafayette. None of the costs of the party were borne by defendant. There was no company business or training or other information-program, conducted at the party. The function was held without the knowledge *254 of Lantier’s superiors in the New Orleans office of the company.
On the evening of the party, Courville left store No. 33 on Ryan Street in Lake Charles with the store manager, Leroy Le-Blanc, and joined Calvin Deshotel, who was then the store manager of the defendant’s store on Highway 14 in Lake Charles, and proceeded in an automobile owned by Calvin Deshotel to the party in Lafayette. Courville left his store No. 33 approximately 6:30 P.M., prior to the store’s closing hour of 7:00 P.M. After the party in Lafayette, these three persons were proceeding directly home when the tragic accident occurred in Lafayette Parish.
The law applicable to this case is found in the Supreme Court decision of Kern v. Southport Mill, 174 La. 432, 141 So. 19, which contains a discussion of the meaning of the phrase “arising out of and in the course of his employment”, found in the provisions of LSA-R.S. 23:1031. In the Kern case, supra, the court stated that “arising out of” and “in the course of” employment are two separate requirements of the Act. To determine whether an accident “arose out of” the employment, it is necessary to consider only (1) whether the employee was then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) whether the necessities of the employer’s business reasonably required the employee to be at the place of the accident at the time the accident occurred. Generally speaking, an accident arises out of an employment if the plaintiff is subjected to a risk because of the employment. An accident is determined to be in the course of’ an employment when it takes place during the time of employment.
Considering the time, place and circumstances of the instant case, and using the guidelines enunciated in the Kern case, supra, we find that Courville’s death did not arise out of or in the course of his employment with defendant.
In reaching this decision, we find, as did the district court, that the going-away party for the outgoing supervisor was not a company sponsored function, either expressly, impliedly or by acquiescence, but rather, it was a social function sponsored by Courville and the other employees of defendant for a fellow employee. The going-away party was Lantier’s idea, and was planned only after he had discussed it with at least two other store personnel. The motive for the party was not to obtain some indirect or intangible benefit for the defendant from the good fellowship or morale of its employees, but rather, the motive was for those who attended to show their respect and appreciation to a fellow employee who was leaving the district. Many of those who attended had known and worked under Brown for several years. The record shows that Brown was well-liked and respected. A number of the various managers testified at the trial as to their reasons for attending the party. Not one testified that he felt they were required to attend or that he attended the party for any other than a social or personal reason. The only obligation felt by those who testified was to honor the invitation out of common courtesy to Brown. None of the managers felt compelled to attend because the invitation was extended by their district supervisor, Lantier, or that their failure to attend might affect their job in any way. Also, there was no evidence that any pressure was brought to bear to require a contribution by any of the employees to bear the expenses of the party, but such contributions were asked on a volunteer basis. There was no evidence of any reprisal or criticism with respect to several of the employees, who, for one reason or another, did not decide to attend the party. No record was kept showing attendance at the party.
Although it might be argued that these employees might be influenced to some extent in their testimony by the defendant’s denial of liability in this case, we concur with the district court’s finding that such *255 influence was not indicated in the least from the frank answers given by the witnesses to the question on this subject, and such influence cannot be assumed. The district court took judicial cognizance of the fact that the invitation to attend any function produces an obligation to honor that invitation out of common courtesy, and that such an obligation is usually accompanied by a sincere desire to participate in the social benefits of the function involved. We agree with this reasoning.
Certain evidence was introduced in an effort to show Courville’s attitude toward the going-away party, indicating he felt a degree of compulsion toward attending the party. After considering this evidence and argument, we find that the recollection by plaintiff of the statements made by Cour-ville are subject to differences in interpretations under the circumstances, and that the statements could simply mean that Courville may have felt an obligation to attend the party because of his regard and respect for Brown. There was also certain evidence introduced concerning certain statements which Lantier reputedly made at the home of plaintiff on the day following the funeral, and also later at store No. 33. The statements were construed by plaintiff to indicate that Lantier said Cour-ville was obliged to go to the party and that she would get compensation from her husband’s death. There is a conflict as to what exactly was said or meant by Lantier. The statements were general in nature, and the construction placed on them by plaintiff was denied by Lantier. In any event,, the other evidence in this case, which was obtained from a careful and thorough examination of the witnesses who attended the party on Lantier’s invitation, makes it clear that Courville was not obligated to attend the party for business reasons, and that any obligation that he may have felt was a personal one.
Plaintiff has advanced certain points and arguments which support plaintiff’s position that the going-away party was a company function. The party was held on company premises. The defendant had no policy at that time prohibiting social gathering on its premises. Certain employees left their stores before closing hours to travel to Lafayette. The party was held immediately following closing hours for the employees of defendant’s store in Lafayette. The defendant had held certain social functions in New Orleans, thereby lending encouragement for such activity at a lower level. These arguments have a certain degree of merit, however, considering the overall facts and circumstances of this case, they do not change the fact that this particular going-away party was not a company function. The location of the party in this case is only one factor to be considered. The evidence does not show that Lantier authorized or encouraged any of the employees to neglect any store’s business, but rather that each manager completed his duties before leaving for the party, and left early only if he was able to arrange someone to relieve him. It is noted that the managers occasionally arranged to leave their stores before closing hours in this manner for other personal reasons. There were certain company sponsored functions held at times-out of the division office in New Orleans. Usually these were sales promotion meetings where specific programs were conducted by company officials. In those instances attendance was obligatory, and the-company paid for the expenses incident to the party and provided for the transportation of the employees. These were-held for special groupings of personnel,, such as managers and assistant managers, or meat market managers and journeyman butchers, for special training purposes, and the different groupings were never invited to one gathering.- Over a period of a number of years, there is evidence that two-going-away parties were held in New Orleans for top personnel in the division. These functions were sponsored and financed by the company. These functions would not set any pattern or give company sanction to such parties at a district level *256 •without some direct authorization or sanction. The going-away party for Brown was not sponsored or financed by the company, nor was it held for business reasons.
The only Louisiana case cited by plaintiff is the Kern case, supra. Plaintiff has cited certain cases involving recreational or social activities from other jurisdictions. The first two citations of cases in Alabama and Florida contain a discussion of the law of those states containing inquiries and guidelines similar to those set forth in the Kern case, supra, but the "holdings of these cases do not support the position of plaintiff. In the Pennsylvania case of Miller v. Keystone Appliances, 133 Pa.Super. 354, 2 A.2d 508, there are many points of similarity with the instant case, however, the case is distinguishable inasmuch as the superintendent in the Miller •case required the attendance of the decedent, such attendance was checked by physical registration, the company provided the costs of the function, and the .affair was held for company purposes.
In the case of Martin v. C. A. Productions Company, 9 A.D.2d 550, 189 N.Y.S.d 528, a member of the cast of a musical production was assaulted at a party held at the conclusion of the final performance of the play. The court awarded compensation on the basis that the affair, which, under the aegis of the employer, continued on the very stage where the work was done, was so related to the employment as to be deemed a continuance of it. It was established that the members of the cast were expected to attend, as was the custom, and that the injured party regarded 3iis attendance as part of his job. The Martin case is distinguishable from the instant case in that there the party was sponsored by the employer, the party was at the regular place of the work performed by the employee, and attendance was obligatory.
In the case of Mack v. State Street Mill Bargain Center, Inc., 17 A.D.2d 1006, 233 N.Y.S.2d 810, a clerk in a department store sustained injuries at a picnic sponsored by the employer, and it was determined that the picnic was designed to promote goodwill of the employees and was within the business interest of the employer to sponsor it. The picnic was organized and financed by the employer, who maintained a list for the employees to indicate their attendance. In the instant case, the party was riot promoted or financed by the defendant, nor was the motive of the party to promote goodwill of the employees for the business interest of the defendant.
The question as to whether or not an employee’s death or injury arises out of and in the course of his employment must be determined by the facts and circumstances of the particular case. Considering the time, place and circumstances in the instant case, we conclude that Mr. Courville’s death did not arise out of or in the course of his employment with the defendant.
For the reasons assigned, the judgment of the district court is affirmed, and all costs of this appeal are assessed against plaintiff-appellant.
Affirmed.