FARMERS ELEVATOR COMPANY, KINGSLEY, Iowa, Employer, and Farmers Elevator Mutual Insurance Company, Insurance Carrier, Appellants,

v.

Milo F. MANNING, Claimant, and Robert C. Landess, Iowa Industrial Commissioner, Appellees.

No. 63045.

Supreme Court of Iowa.

Dec. 19, 1979.

James C. Huber of Jones, Hoffmann & Davison, Des Moines, for appellants.

Robert J. Dull of Dull Law Firm, LeMars, for appellee Manning.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS, and McGIVERIN, JJ.

UHLENHOPP, Justice.

The primary issue in this appeal is whether injuries of a workers' compensation claimant arose out of and in the course of his employment for Farmers Elevator Company.

The parties agree on the basic facts. Before claimant Milo F. Manning was injured he worked as a salesman for the Elevator. He sold Elevator products by making sales trips to farms in the Kingsley area. Among the commodities he sold was an animal health product manufactured by Supersweet Feeds.

On the night of June 25, 1975, claimant was injured on his way home from a dinner given for customers of Farmers Elevator who purchased a specified amount of the

Supersweet product. Although the parties disagree as to who "sponsored" the event, they do not dispute that the Elevator purchased steaks for the dinner at the request of claimant and a representative of Supersweet, while Supersweet arranged for the building and furnished the drinks. The Elevator manager was present at the dinner. Many of the guests in attendance were customers of claimant whom he invited as he made his sales rounds. Although the Elevator did not expressly order claimant to attend the dinner, claimant testified he felt an obligation to the Elevator to do so. Consequently, rather than visit his hospitalized son as he had done on every one of the other nights that week, claimant arrived at the dinner early and helped prepare the meal and serve the guests. After everyone had eaten, claimant remained at the dinner two or three hours longer to converse with fellow employees and Elevator customers. On his way home from the dinner at approximately 1:00 a. m., claimant fell asleep at the wheel of his van. The vehicle left the road and he received serious injuries to his neck and back.

After claimant and the Elevator were unable to reach agreement regarding compensation for the injuries, claimant filed a petition for arbitration before the Iowa Industrial Commissioner. On February 24, 1978, following a hearing, a deputy commissioner found that claimant's injuries arose "out of and in the course of" his work and that as a result he was entitled to benefits and weekly disability payments pursuant to section 85.3 of the Code of 1979. The Elevator and its insurer exhausted their administrative remedies, and then petitioned for judicial review in district court. The court affirmed the decision. We will speak of the Elevator and its carrier collectively as the Elevator.

In this appeal from the district court's judgment, the Elevator contends that claimant should be denied compensation because his injuries did not arise out of or in the course of his employment. It also asserts that the agency's decision was not sufficiently certain regarding the disability basis to permit judicial review, that the

Elevator did not receive adequate notice of claimant's injury, and that, in any event, interest should be computed on unpaid compensation from the date of the district court's judgment, "at the earliest."

In appeals of this kind pursuant to the Administrative Procedure Act, §§ 86.26, 17A.20, The Code, "we review the record in the manner specified in § 17A.19(7)." *Hoffman v. Iowa Department of Transportation,* 257 N.W.2d 22, 25 (Iowa 1977). "Our review is limited . . . to the record made before the hearing officer." *Davenport Community School District v. Iowa Civil Rights Commission,* 277 N.W.2d 907, 909 (Iowa 1979). We uphold agency fact findings which are supported by substantial evidence in the record made before the agency when that record is viewed as a whole. § 17A.19(8); *Young Plumbing & Heating Co. v. Iowa Natural Resources Council,* 276 N.W.2d 377, 383–84 (Iowa 1970).

I. *"Out of and in the course of the employment."* The Elevator offers several grounds in support of its contention that claimant's injury arose neither out of nor in the course of the employment.

The Elevator's basic argument is that claimant failed to establish he was performing any employment duties or engaging in any acts incidental to his employment while attending the dinner on the night in question. The Elevator asserts that additional factors operate to bar a finding that claimant was acting within the course of his employment on the night he was hurt. It alleges that the accident occurred while claimant was going home so as to call for application of the "coming and going" rule regarding employer liability, that claimant was intoxicated and his intoxication was a proximate cause of his injury, and that claimant's conduct in attempting to drive home while "in no condition" to do so constituted such an "unusual or rash act" as to prohibit compensation.

1. The Elevator's argument that claimant was not performing any employment duties on the night he was injured is appar-

ently based in large part on the allegation that his presence at the dinner was not "required" by his employer within the meaning of section 85.61(6) of the Code. Paragraph 6 of the section provides that "[t]he words *'personal injury arising out of and in the course of the employment'* shall include . . . injuries to those who are engaged . . . in places where their employer's business requires their presence and subjects them to dangers incident to the business."

When faced on prior occasions with the argument that an injured employee's presence at the scene of an accident was not "required," this court has adopted a liberal interpretation of the "course of employment" criterion. We have thus said that

> [a]n injury occurs in the course of the employment when it is within the period of employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An injury in the course of employment embraces all injuries received while employed in furthering the employer's business and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment or be an act wholly foreign to his usual work. *An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer.*

*Bushing v. Iowa Railway & Light Co.,* 208 Iowa 1010, 1018, 226 N.W. 719, 723 (1929) (citations omitted, emphasis added).

▪ In applying the statutory forerunner of section 85.61(6) to injuries suffered by a salesman at a social event, this court looked to the purpose and nature of the event to determine if the employer's business "re-

quired" the salesman's presence. *Linderman v. Cownie Furs,* 234 Iowa 708, 710, 13 N.W.2d 677, 679 (construing § 421(6), The Code 1939). The test is whether the act is "in any manner dictated by the course of employment to further the employer's business." *Id.* In this regard the court has noted "the salesman's calling as one that demands somewhat special obligation." *Id.* at 713, 13 N.W.2d at 680. "A successful salesman must be a good listener as well as a good talker. He must be able to accept as well as give. He must be a grateful guest as well as a generous host." *Fintzel v. Stoddard Tractor & Equipment Co.,* 219 Iowa 1263, 1267, 260 N.W. 725, 726 (1935). The court has therefore allowed compensation to a salesman who was shot while pheasant hunting with the son of a prospective customer, since "[t]he course of his employment . . . required that he enthusiastically and gratefully avail himself of this form of entertainment which the customer had so generously proffered" despite the absence of a specific order from his employer to join the hunting party. *Id.* at 1268, 260 N.W. at 727.

As a reasonable limitation on the scope of employment-related entertainment, "the authority of the particular employee to undertake entertainment or recreational activities on behalf of his employer must be genuine." 1A A. Larson, Workmen's Compensation § 22.21, at 5–82 (1978). Larson states that the factors relevant to a determination of the existence of such authority include the degree to which the recipient of the entertainment is in a position to make decisions that benefit the employer, whether authority was actually conferred on the employee to engage in the entertainment, and the extent to which the employer pays for the cost of the entertainment. *Id.* at 5–82 through 5–83.

▪ This record contains sufficient evidence to support a finding that claimant's participation in the customer appreciation dinner was both beneficial to and authorized by the Elevator. Regarding the latter, the recipients of the dinner were customers of the Elevator and therefore in a position

to make decisions of benefit to it. Moreover, the agency could reasonably conclude that Mr. Richardson, for the Elevator, authorized claimant's participation by agreeing to supply the steaks when asked to do so by claimant and a Supersweet representative. As to benefit derived by the Elevator as a result of claimant's participation in the dinner, most of the invitees were claimant's own customers and received their invitations from him while he traveled his sales route. At the dinner, claimant prepared the steaks supplied by the Elevator and served them to the guests, in addition to conversing during the course of the evening with many of the farmers. The agency could reasonably find that claimant's participation in the dinner furthered the goal of cultivating customer goodwill and that claimant's participation in the dinner was both authorized by and beneficial to the Elevator.

None of the cases cited by the Elevator in this section of its brief involve social events where customers were entertained by salesmen-claimants. We have examined the cases but find a detailed review of them here to be unnecessary.

2. The Elevator next contends that because the injury occurred while claimant was on his way home, compensation is barred by the "coming and going rule." In applying this rule we have said that a worker who has a definite place and time of work ordinarily is not considered to be acting within his employment while returning to his home. *See Halstead v. Johnson's Texaco*, 264 N.W.2d 757, 759 (Iowa 1978).

■ This fact setting is not an appropriate one for application of the rule. Most courts which have addressed the issue hold that when an injury occurs while an employee is traveling to or from a social function which occurs somewhere other than the workplace, compensability depends on the extent to which the function is employment-related. 1A A. Larson, supra, § 22–23, at 5–97 through 5–99; Annot., 47 A.L.R.3d 571 (1973). The Elevator cites no cases inconsistent with this view. Since the agency could find as it did that claimant's

attendance at the dinner was otherwise within the course of his employment, it could also find that compensation is appropriate for an injury that occurred during his trip home from that event.

3. The Elevator also urges that claimant was intoxicated and that his intoxication was a proximate cause of his injuries. If such were the case, claimant would be unable to obtain compensation. § 85.16(2), The Code. *See also Rigby v. Eastman*, 217 N.W.2d 604, 606 (Iowa 1974).

■ We find substantial evidence in the record to support the conclusion that intoxication was not a proximate cause of claimant's injury. The record shows that claimant naturally would have been drowsy on the night in question due to his nightly visits to his son in Sioux City. Although appellants introduced the testimony of two Supersweet employees that, in their opinions, claimant had too much to drink on the night in question, claimant produced five witnesses who either attended the party or were present at the accident scene and expressed negative opinions on the issue of claimant's intoxication. We have said on numerous occasions that the weight to be given opinion testimony is for the trier of fact to decide. *See e. g. Herman Ford-Mercury, Inc. v. Betts*, 251 N.W.2d 492, 493 (Iowa 1977); *DeYarman v. State*, 226 N.W.2d 26, 29 (Iowa 1975). *See also* Iowa R.App.P. 4. By awarding compensation, obviously the agency found the weight of the testimony on the intoxication issue to be in favor of claimant. The finding has substantial support in the record, viewed as a whole.

4. The Elevator's final ground for its contention that claimant's injuries did not arise out of and in the course of his employment is that claimant's conduct in attempting to drive home while in "no condition" to do so constituted an "unusual or rash act." We recently abandoned the unusual and rash act doctrine. *Hawk v. Jim Hawk Chevrolet-Buick, Inc.*, 282 N.W.2d 84, 91 (Iowa 1979).

We therefore uphold the agency finding that claimant was in the course of his employment at the time of his injuries and that the injuries arose out of his employment.

■ II. *Certainty of disability finding.* The Elevator asserts that the basis given by the agency for finding 50% industrial disability is inadequate to enable the courts to review that finding. We quote the relevant portion of the agency findings, omitting citations:

Dr. Blenderman in a report to the defendant insurance carrier on May 18, 1977 expressed his medical opinion that the claimant has a 20% functional impairment of the body as a whole.

. . . .

Since the claimant has a disability to the body as a whole, he is entitled to have his disability evaluated industrially and not merely functionally. In determining industrial disability, consideration may be given to the injured employee's age, education, qualifications, experience, and inability because of the injury to engage in the employment, for which he is fitted. It is the reduction in earning capacity which must be determined.

This claimant, age 60, in the opinion of Dr. Blenderman will be unable to return to his former occupation. The job opportunities available to the claimant, based on his inability to walk or to ride in a motor vehicle for any appreciable length of time, together with the constant presence of pain, are limited. In applying the principles set forth . . . it is concluded that the claimant has sustained an industrial disability of 50% of the body as a whole.

The agency's statement of the standards applied, the evidence relied on, and the reasoning used satisfies the requirement enunciated in *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973). As to the standards applied, the agency specifically stated the criteria for determining disability approved in *Olson v. Goodyear Service Stores*, 255 Iowa 1112, 1121, 125 N.W.2d 251, 257 (1963). Regarding the evidence he relied on, the agency made particular note of claimant's age, his inability to continue in his present job, and his limited employment opportunities available by virtue of his pain and inability to walk or ride in a vehicle for any appreciable length of time. We do not require the findings to contain greater specificity. The findings must be specific enough to enable the reviewing court to determine with reasonable certainty the factual basis on which the commissioner acted, *Catalfo*, 213 N.W.2d at 509, and these findings fulfill the purpose.

■ III. *Adequacy of notice to employer.* The Elevator contends that claimant's failure to give it adequate notice of his claim bars him from receiving compensation. While the Elevator apparently does not dispute that it had actual knowledge of claimant's injury, it asks us to construe section 85.23 of the Code to require that workers' compensation claimants give their employers written notice within the ninety-day time limit of their *intention to file a claim.* We do not find support in section 85.23 for the construction the Elevator suggests. We quote that provision:

Unless the employer or his representative shall have *actual knowledge of the occurrence of an injury* received within ninety days from the date of the occurrence of the injury, or unless the employee or someone on his behalf or a dependent or someone on his behalf shall give notice thereof to the employer within ninety days from the date of the occurrence of the injury, no compensation shall be allowed. (Emphasis added.)

The section requires no more than actual knowledge of the occurrence of an injury and we so held in *Nicks v. Davenport Produce Co.*, 254 Iowa 130, 136, 115 N.W.2d 812, 815 (1962).

The Elevator cites a passage from 3 A. Larson, supra, § 78.31(a), at 15–42 through 15–44:

It is not enough, however, that the employer, through his representatives, be aware [of claimant's malady]. There must in addition be some knowledge of

accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.

We find no necessity to say whether our statute requires "in addition" some knowledge of the fact stated in the second sentence from Larson. According to claimant's testimony, the employer's assistant manager visited claimant in the hospital the day after the accident and was therefore aware claimant's injury occurred while claimant was on his way home from the customer appreciation dinner. The agency could reasonably find that this knowledge should put a "reasonably conscientious" manager on notice "that the case might involve a potential compensation claim."

IV. *Interest on compensation payments.* The Elevator asserts that interest on claimant's unpaid compensation should commence, at the earliest, at the time of the district court affirmance of the agency's decision. This argument stands or falls on construction of section 85.30 of the Code, which provides that

> [c]ompensation payments shall be made each week beginning on the eleventh day after the injury, and each week thereafter during the period for which compensation is payable, and if not paid when due, there shall be added to such weekly compensation payments, interest at six per cent from date of maturity.

Section 85.30 expresses legislative intent that interest on unpaid compensation be computed from the date each payment comes due, starting with the eleventh day after the injury. To adopt the Elevator's method of computing interest on unpaid compensation would defeat the apparent purpose of section 85.30, as well as jeopardize the goal of other sections which evidence legislative desire to secure compensation for injured employees and their dependents at the earliest time. *E. g.,* § 86.20 (encouraging payment during investigation stage of disability claim). The need for an incentive to pay compensation when due is particularly acute in view of the delays which sometimes regrettably occur between the time of an employee's injury and final resolution of the claim. *See Anderson v. Oscar Mayer & Co.,* 217 N.W.2d 531, 536 (Iowa 1974).

The first compensation installment in this case became due on July 6, 1975, eleven days after the injuries occurred. Interest is therefore payable on such installment from that due date, and similarly with the following weekly payments. We so construe the agency decision, and approve it.

The district court was right in upholding the agency decision.

AFFIRMED.