## Titus, Appellant, v. S. E. Sostmann & Company et al.

Argued September 26, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER and RHODES, JJ.

*Alexander F. Barbieri,* for appellant.

*John T. J. Brennan,* with him *Guy K. Bard,* Attorney General, *S. H. Torchia,* and *Albert C. Richter,* for appellees.

OPINION BY RHODES, J., November 18, 1938:

This is a workmen's compensation case, and the only question before us is whether claimant was in the course of his employment when injured.

"In this Commonwealth, contrary to the rule in some other states, the Workmen's Compensation Act does not give a right of compensation for all injuries arising out of the employment. The statute under which this claim is made requires that the injuries, not occurring on the premises of the employer, be sustained while the

employee is 'actually' engaged in the furtherance of the business or affairs of his employer, and 'actually' means 'as an actual or existing fact' and does not mean 'constructively' engaged: *Maguire v. James Lees & Sons Co.*, 273 Pa. 85, 88, 116 A. 679. Where compensation has been allowed for injuries occurring off the premises, the decisions show that the employee sustained his injuries while actually engaged in some as yet incompleted business of his employer: *Palko v. Taylor-McCoy C. & C. Co.*, 289 Pa. 401, 404, 137 A. 625.

"Whether one was injured in the course of his employment, as that phrase is used in the act, is a question of law and, as such, open to review: *Callihan v. Montgomery*, 272 Pa. 56, 115 A. 889. No general formula has been developed which will enable us to determine readily whether an accident off the premises occurred in the course of employment even though the elementary facts are not in dispute. Experience has shown that many cases involving this question must be disposed of on their own peculiar facts ......": *Healey v. Hudson Coal Co.*, 130 Pa. Superior Ct. 462, at page 464, 198 A. 684.

After the first hearing the referee disallowed compensation, and upon appeal to the Workmen's Compensation Board that body remanded the case to the referee for the purpose of taking additional testimony. A second hearing was held, after which the referee again disallowed compensation. Claimant again appealed to the Workmen's Compensation Board, which set aside the referee's findings of fact, conclusions of law, and disallowance, and made an award. The defendant insurance carrier appealed to the court of common pleas, which reversed the board and dismissed the petition. Claimant has appealed to this court.

Claimant was employed as a meat salesman, at a salary of $30 per week, by defendant employer. He testified at the first hearing that his work consisted of

soliciting orders, which he did either on the street or at home. In his claim petition claimant alleged that he was injured on October 3, 1935, at 9:15 P.M., when he slipped as he was going downstairs in his home, having gone upstairs for a blank form. He testified that at the time of his injury he was making out specification blanks, and that "this part of the work has to be done at home." He said that he kept most of his papers on the second floor of his home, and maintained an office on the first floor, where he had a desk. After he had sustained his injury he completed the form for which he had gone upstairs, and his wife delivered it to his employer the following day. Claimant said that his employer sent lists of customers and accounts for him to take care of at home, and in addition to that he wrote letters at home, and held conferences there with dietitians and others on the subject of meats. On cross-examination he testified that he had to make out these forms at home because he could not do it on the street—"they have to be done in pen and ink." He testified further: "Q. Did your employer ever instruct you to do any work at home? A. He gave me work to do at home. Q. On this particular night? A. No, but it could not be done in any other place. Q. When you finished your day's work, canvassing on the street, you were through as far as your employer was concerned, were you not? A. Yes, as far as he is concerned, but a salesman is never done. Q. As far as your employer himself is concerned, when you were through canvassing on the street, then your employment ceased as far as your employer was concerned? ...... A. I had no instructions from my employer. Q. Did you have instructions from your employer to work that night? A. That is one night that I always have to work. Q. Did you have instructions from your employer to work that night? A. Never had instructions from him to work any night. That is the nature of our business, to work all the time."

In its opinion remanding the case to the referee for the purpose of ascertaining the exact duties of claimant, and whether making out papers at his home was such practice as defendant acquiesced in or permitted or expected its salesmen to do, the board said: "After a careful study of the testimony we are of the opinion that the record in its present state is not sufficient on which we could intelligently pass as to whether claimmant was in the course of his employment at the time of the accident."

At the second hearing the only witness was Louis E. Waxman, who was secretary of defendant employer. He testified that claimant's duties were the same as any other salesman, namely, the solicitation of business by letter, telephone, and in person. He was asked: "Q. Did he receive any instructions from you or anyone of your firm to do any of his work at home? A. No, when he was hired that was not the understanding but it could be possible a man would work at home at night but we open the place at six in the morning and close at five at night. I was never aware that he worked at home until after I came to visit him and he told me he worked at home. Q. Did you demand or expect your employees— this particular man, to do his work at home? A. No, we never requested any man to work at home. Q. All the work he could do for you in that capacity could be done otherwise than working at home? ...... A. Any work he did at night was of his own volition. He was never asked to work at night and I never knew he did until after he had this accident." He was asked concerning the making of these reports: "Q. You didn't forbid him to do it at home? A. No, but I didn't ask him to do it either." He was asked: "Q. And if he works overtime in order to do that [increase his sales], you don't restrict him, as long as he turns in the business? A. That's right. Q. What were his working hours? A. We gave him a free hand. We open at

six and close at five-thirty and any salesman can work any time he wants. We expect them to report a few hours a day and sometimes they turn orders in over the telephone. Q. While your hours were six to five-thirty, they can work any time during that time, no matter how many hours, as long as they produce? A. That's right, as long as they bring business in."

The referee again disallowed compensation, but the board, upon appeal, set aside the findings of fact, conclusions of law, and order of disallowance, and made an award based on the following findings of fact, which are the only ones relevant to the present inquiry:

"1: That on October 3, 1935, and for a period of time prior thereto, the claimant was in the employ of the defendant as a salesman. That in such capacity he was to report at defendant's headquarters during the hours of 6:00 A.M. and 5:30 P.M. and could solicit business by personal interview, by letter, or by telephone. That he was not specifically instructed to secure orders from home, but the defendant had no objection to such procedure so long as the business was turned in to the defendant company. ......

"4: That on October 3, 1935, about 9:15 P. M., the claimant while making out specification blanks was compelled to go to the second floor of his home to secure said specifications and when returning to the first floor, slipped, falling down the stairway, sustaining injuries which disabled him. ......

"10: That although claimant could report to the office between the hours of 6:00 A.M. and 5:30 P.M. he was in the course of his employment with the defendant when the accident happened at his home about 9:35 P.M. because he was furthering the business of his employer and such furtherance of business, while not requested by the employer, was acquiesced in by said employer as long as the business was turned in to the employer.

"11: That the report of the business conducted at his home at or about 9:35 P.M. October 3, 1935 by the claimant was actually turned over to the employer by said claimant's wife on October 4, 1935."

Predicated upon those findings of fact was this conclusion of law:

"2. That since the claimant on October 3, 1935 was actually furthering the business of his employer and was in the course of his employment with said employer, because his employer had acquiesced in the method being pursued by the claimant at the time he met with the accident and resultant disability, he is entitled to recover compensation in accordance with the provisions of the Workmen's Compensation Act of 1915, as amended."

Perusal of the testimony leads us to agree with the court below that the evidence does not support the finding that defendant employer acquiesced in claimant's practice of doing this work at home. One cannot acquiesce in what one does not know, and there is no evidence that defendant employer knew that claimant made these reports at home. In fact, the only evidence is to the contrary in that part of Waxman's testimony where he said: "I was never aware that he worked at home until after I came to visit him and he told me he worked at home."

In the findings of fact made by the board it seems to be assumed that claimant was engaged in securing orders at the time of his injury, and it is said that the employer acquiesced in this activity as long as business was turned in. There is no evidence to show that claimant was soliciting orders at the time he fell, and his own testimony is that he was engaged in making the report previously mentioned. A different light might be shed on this claim had claimant been engaged in the actual solicitation of business, in view of the employer's admissions regarding the wide latitude given salesmen

with reference to their hours of work and methods of contacting prospects. But the testimony is that claimant was engaged in filling out a form or report relating to previous competitive bids for various institutions. The testimony that these forms had to be completed at home because they were required to be written with pen and ink does not alter the situation. The fact that they had to be so written was not a condition necessitating their being done at claimant's home. Ink is too common a commodity to give that factor any bearing; its use did not compel claimant to do this work when and where he was doing it, as he was expected to be at his employer's place of business a few hours each day.

We think that the facts of this case bring it within the principle of *Haley v. City of Philadelphia*, 107 Pa. Superior Ct. 405, 163 A. 917. There, as here, the employee's practice of making out reports at home was neither expressly affirmed nor dissented from by the employer. But the practice when followed was voluntary on the part of the employee as he was not required so to do. In affirming the action of the court below, which entered judgment for the defendant employer, we said, at page 408, quoting from the opinion of our Supreme Court in *Cronin v. American Oil Co.*, 298 Pa. 336, 340, 148 A. 476, 478: "'When he left his working-place to go home, the liability of the employer to him as an employee ended, unless after departing from the premises he was incidentally performing some act for the master under his contract of service. The exception in such case is found where there is some special duty undertaken for and directed by the employer after the work is completed: *Haddock v. Steel Co.*, 263 Pa. 120 [106 A. 196]; *Cymbor v. Binder Coal Co.*, 285 Pa. 440 [132 A. 363]. It must not be an act done for the mere convenience of the employee, but by order of the master, express or implied: *Fairbank Co. v. Industrial Com-*

*mission,* 285 Ill. 11, 120 N. E. 457. ...... The mere fact of employment is not enough to justify an award of compensation, for the injury must be inflicted while engaged in the course of it: *Shoffler v. Lehigh Valley Co.,* 290 Pa. 480 [139 A. 192].'"

In the instant case claimant failed to establish that the making of this report at home was done either at the direction or with the approval of his employer, and this is fatal to his claim. Claimant himself admitted that he was through, as far as his employer was concerned, after finishing his canvassing for the day.

Counsel for claimant argues that salesmen have been set in a class apart by the decisions of the Supreme Court and this court, and he cites *Beck v. Ashton et al.,* 124 Pa. Superior Ct. 307, 188 A. 368; *Kelly v. Ochiltree Electric Co. et al.,* 125 Pa. Superior Ct. 161, 190 A. 166; *Baumann v. Howard J. Ehmke Co. et al.,* 126 Pa. Superior Ct. 108, 190 A. 343; *Krapf v. Arthur,* 95 Pa. Superior Ct. 468; *Green v. Hiestand Bros. et al.,* 103 Pa. Superior Ct. 515, 157 A. 44; *McDermott v. Sun Indemnity Company of New York,* 131 Pa. Superior Ct. 60, 198 A. 499. He also quotes the dictum of PARKER, J., in *Healey v. Hudson Coal Co.,* supra, at p. 468, that: "Just as in the case of a travelling salesman, we must frequently search for the line beginning or ending the employment at some other point than the boundaries of a particular premises." True, the roving nature of such employment, the discretion allowed with reference to hours and methods, sometimes give this employment an elasticity not found in others where activities are more circumscribed. But it will be found in every case where an award has been upheld that the salesman was engaged in an act by direction of his employer, express or implied, and not merely for his own convenience. Being a salesman does not change an activity not in the course of employment to one that is. See *Paulin v. Williams & Co., Inc., et al.,* 122 Pa.

Superior Ct. 462, 186 A. 415; affirmed 327 Pa. 579. The cases cited are all clearly distinguishable by their facts, and do not control the situation in the case at bar.

The facts do not support the conclusion that claimant sustained his injuries while in the course of his employment.

The order of the court below is affirmed, and the record is remitted that judgment may be entered in favor of defendant.