Rosemarie Krawchuk, Widow of John Krawchuk, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Philadelphia Electric Co., Respondents.

Argued September 14, 1978, before Judges CRUM-LISH, JR., ROGERS and CRAIG, sitting as a panel of three. Reargued December 6, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*Albert Ring,* with him *Don F. D'Agui,* and *D'Agui & Del Collo,* for appellant.

*Thomas F. McDevitt,* for appellee.

OPINION BY JUDGE WILKINSON, JR., February 26, 1979:

Petitioner (claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which reversed an award of compensation made by the referee on the grounds that a compensable injury had not been proven as a matter of law within the meaning of Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.

Claimant is the widow of John Krawchuk, who sustained a fatal myocardial infarction (heart attack) in his home shortly after midnight on May 10, 1973. The decedent, 52 at the time of his death, had been employed by the respondent, Philadelphia Electric Com-

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411. This Section reads in relevant part:

The terms 'injury' and 'personal injury' as used in this act, shall be construed to mean an injury to an employe . . . arising in the course of his employment and related thereto. . . . The term 'injury arising in the course of employment,' as used in this article . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of his employer whether upon the employer's premises or elsewhere. . . .

pany, as an electrical engineer for approximately 27 years.

On October 12, 1973, the claimant filed a fatal claim petition alleging the decedent's heart attack was due to excessive strain and pressure in connection with his work. At the referee's hearing, claimant testified that her husband would frequently bring work home from the office and work in his shop in the basement after dinner. She testified that on the night of his death decedent worked for approximately five hours after dinner on a paper which he was to deliver at a public utilities meeting in Los Angeles on May 14, 1973. Claimant also offered the testimony of decedent's physician who examined the decedent during a routine office visit the day before his death. The decedent told his physician that he was under stress because he was concerned about the paper; the physician then stated that in his opinion there was a causal connection between the stress decedent related to him and his death the next day.

The employer presented nine witnesses, all of whom worked in the same engineering division with the decedent. The engineer in charge of the division testified that in addition to his regularly assigned duties, decedent had been working on a specially assigned project, called PMS4, regarding the potential use of computers in the division. The supervisor testified that decedent was offered the project because of his special interest and experience; that decedent voluntarily undertook the project; that he generally worked alone, although help was available to him; and that no deadline was set on the project. He further stated that decedent was not required to work beyond regular business hours and that he (his supervisor) was not aware that the decedent was working at home. Five other witnesses who either were or had been decedent's supervisors also testified that decedent had

not been required to work at home or beyond regular business hours. These witnesses further testified that after decedent returned to work following a non-work related heart attack in 1967 he was given a reduced work load. His immediate supervisor testified that at the time of his death decedent was assigned to complete one substation design with a 1975 deadline.

The referee made the following findings of fact relative to his conclusion that the heart attack constituted a compensable injury:

7. At the time of his death, Claimant's decedent was working under great and unusual stress stemming from the work he was doing in connection with a special project known as 'PMS4', and a treatise he was to deliver, on behalf of his employer, in California. . . .

. . . .

10. All of the above activities constituted additional and unusual exertion on the part of Claimant's decedent, arising from and related to his employment.

11. On the day prior to his heart attack, Claimant's decedent was examined by Dr. Albert Kraft, who at the time found the Claimant's decedent to appear tired and under great stress due to his added work load.

12. For five hours prior to the heart attack, Claimant's decedent had been working in his home on the treatise. . . .

13. Dr. Kraft, a cardiology specialist, testified as to a causal relationship between the stress occasioned by Claimant's decedent's heavy work load and the coronary which he sustained on May 10, 1973. . . .

Therefore, the referee concluded that the decedent suffered a compensable injury within the meaning of the Act when he sustained a fatal coronary attack at his home after an extended period of additional and unusual strain and exertion, including five hours at home immediately prior to his coronary attack, in carrying on for his employer his duties in a special project at work and in the preparation of the material for a treatise he was to deliver. . . .

On appeal, the Board vacated the referee's conclusions of law that the decedent had suffered a compensable injury, finding that the referee failed to make a necessary finding of fact that the decedent had been in the course of his employment at the time of his death. After a review of the testimony, the Board concluded that there was insufficient evidence to support such a finding and dismissed the claim.

Before this Court, claimant argues that the Board exceeded its authority in dismissing the claim because the Board's conclusion that decedent was not in the course of his employment based on the employer's evidence was tantamount to rejecting a finding of fact made by the referee which found this testimony "not to be persuasive as to the lack of stress . . . especially because they were not familiar with the extent of the work performed by claimant's decedent at his home . . . and particularly during several hours on the evening immediately preceding his death."

However, it is clear from a reading of this finding that the referee was referring to the causal relationship between decedent's death and the stress he experienced from his work, rather than a finding relating to facts that must be established to show that the employee was in the course of his employment at the time of his death. The question of whether an em-

ployee is in the course of his employment in order to qualify for benefits under the Act is one of law and the referee's determination on this issue is subject to review and reversal by the Board. *Buchan v. Royal Pizza House, Inc.*, 28 Pa. Commonwealth Ct. 121, 367 A.2d 824 (1977). Further, the burden is upon the claimant to prove that the injury was sustained in the course of employment. *J. R. Hess, Inc. v. Workmen's Compensation Appeal Board*, 17 Pa. Commonwealth Ct. 87, 329 A.2d 923 (1975). The only finding of fact made by the referee concerning course of employment is contained in Finding of Fact 10 which is a mere conclusion of law. Therefore, we conclude the Board did not exceed its proper scope of review.[2]

Turning to the ultimate issue—whether the decedent's heart attack occurred while he was in the course of his employment—the claimant argues her testimony concerning the decedent's work habits at home is sufficient to establish the requisite facts to show that the decedent died while in the course of his employment.

---

[2] *See* Section 424 of the Act, 77 P.S. §855.

It is true, as claimant suggests, that the causal relationship between the death of the decedent and the stress of his work was established by medical testimony which was accepted by the referee and is therefore binding on the Board and this Court. However, in order to sustain a finding of a compensable injury pursuant to Section 301(c) the claimant must adduce evidence sufficient to establish first, a causal connection between the injury and employment and second, that the injury or death arose in the course of employment. It is the latter element or requirement upon which the Board based its decision and to which our attention is directed. Consequently, those decisions upon which the claimant relies for the general proposition that heart attacks are compensable injuries are inapplicable since those cases concerned the issue of whether or not a causal connection had been established relating to an injury that unquestionably arose in the course of employment. *See, e.g., City of Johnstown v. Workmen's Compensation Appeal Board*, 33 Pa. Commonwealth Ct. 464, 381 A.2d 1355 (1978).

When an employee is injured off the premises of his employer, the injury is deemed to have arisen in the course of employment only if it is shown that the employee is actually engaged in the furtherance of the employer's business. *Cozza v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 605, 383 A.2d 1324 (1978). Where an employee is injured in his home, furtherance of the employer's business has been held to mean that the employee was doing something at home for the convenience of his employer, that he was performing a specific duty by reason of a clearcut request by his employer or that the employer directed the employee to work at home. *See LoPresti v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 7, 384 A.2d 1017 (1978); *Workmen's Compensation Appeal Board v. Hickory Farms,* 28 Pa. Commonwealth Ct. 30, 367 A.2d 730 (1976). Thus, an employee who chooses to work at home, for whatever reasons personal to him, and not at the behest of his employer, is doing so for his own convenience rather than that of his employer.

Here, the findings of the referee, as established by the evidence support the conclusion that the decedent was extremely interested in the special "PMS4" project and that he worked on the paper which dealt with this project at home in the evenings. The record, however, is devoid of any evidence that the decedent was under a deadline or told to complete the paper even if this meant working beyond normal business hours. The claimant's testimony and that of decedent's physician established only that the decedent himself was anxious to complete the paper and wished to do a good job on it. On the other hand, the uncontradicted evidence of the employer established that the decedent's hours of employment were definitely fixed; that no immediate deadline had been set on decedent's work; and that the decedent's supervisors did not re-

quest and were unaware that the decedent worked at home. Indeed, the referee's finding of fact referred to earlier supports the conclusion that the referee found this testimony credible. It is axiomatic that one cannot acquiesce in what one does not know. *See Titus v. S. E. Sostmann & Co.*, 133 Pa. Superior Ct. 201, 2 A.2d 580 (1938). Given such evidence and in light of this finding made by the referee, we must agree with the Board that the referee erred as a matter of law in finding that the decedent's heart attack arose in the course of his employment.

Accordingly, we will enter the following

ORDER

AND Now, February 26, 1979, the order of the Workmen's Compensation Appeal Board, at No. A-72689, dated July 21, 1977, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

From the time of its enactment in 1915, until 1972, The Pennsylvania Workmen's Compensation Act[1] provided compensation for personal injury to, or for the death of, an employe, by an accident, in the course of employment.[2] In 1972, Section 301(a) of the Act, so providing, was amended[3] by the deletion of the phrase "by an accident," so that since that time a personal injury to, or the death of an employe, by an injury in the course of his employment has been compensable. Heart attacks were thereby made personal injuries and where they occurred in the course of employment were compensable without proof of accident.[4]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

[2] Section 301(a), 77 P.S. §431.

[3] By the Act of March 29, 1972, P.L. 159.

[4] In *Workmen's Compensation Appeal Board v. Ayers Philadelphia, Inc.*, 479 Pa. 286, 388 A.2d 659 (1978). Before 1972, heart at-

John Krawchuk died of a heart attack which his treating physician, whose evidence was accepted by the referee who heard the case, testified was the result of stress caused by his work. If he had died in his employer's offices his death would clearly have been compensable. Because he died at home, although, as the referee found, moments after he had worked for several hours after dinner on a project for his employer, the majority holds that his widow is not entitled to benefits. It does so by application of a wholly court-made rule of questionable origin and history.

The majority declares the rule to be that "[w]here an employe is injured in his home, furtherance of the employer's business has been held to mean that the employe was doing something at home for the convenience of his employer, that he was performing a specific duty by reason of a clearcut request by his employer or that the employer directed the employe to work at home."

Section 301(c) of the Act, 77 P.S. §411, reads:

The terms 'injury' and 'personal injury' . . . mean an injury to an employe . . . *arising in the course of his employment and related thereto* . . . [and] . . . *shall include all . . . injuries* sustained while the *employe is actually engaged in the furtherance of the business or affairs* of the employer, *whether upon the employer's premises or elsewhere,* and shall include all injuries caused by the condition of the employer's premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though *not so engaged* is injured upon the . . . [employer's] . . . premises. (Emphasis supplied.)

---

tacks were compensable, if an accident or one of the court-made substitutes for an accident could be proved to be the cause. *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A.2d 601 (1969).

The well supported findings here establish that John Krawchuk's fatal heart attack arose in the course of his employment, that it was related to his employment, and that it was sustained while John Krawchuk was actually engaged in the furtherance of the business or affairs of his employer. The statute was satisfied. The question is whether the court-made rule that an employe who is injured elsewhere than on the employer's premises must prove not only that he was actually engaged in the furtherance of his employer's business or affairs as the statute provides but also that he was performing "a specific duty by reason of a clearcut request by his employer or that the employer directed the employe to work at home." I believe not.

The crucial phrase of Section 301(c), "shall include all injuries while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere" remains unchanged since 1915. The court-made rule encrusted upon the statute that an employe who sustained injuries while working elsewhere than on the employer's premises must prove that his employer directed him to work at the place of injury, seems to have had its origin in *Cronin v. American Oil Co.*, 298 Pa. 336, 148 A. 476 (1929). There a gasoline station attendant was injured when he was set upon and robbed while going home from work. He was carrying on his person the day's receipts which he contended put him in the course of his employment. The employer had installed a safe in the office of the station for the keeping of cash which the claimant had not used. The Supreme Court wrote:

When he left his working place to go home, the liability of the employer to him as an employee ended, unless after departing from the premises he was incidentally performing some act for the

> master under his contract of service. The exception in such case is found where there is some special duty undertaken for and directed by the employer after the work is completed. . . .

298 Pa. at 340-41, 148 A. at 478.

In support of this statement, two cases are cited: *Haddock v. Edgewater Steel Co.*, 263 Pa. 120, 106 A. 196 (1919), and *Cymbor v. Binder Coal Co.*, 285 Pa. 440, 132 A. 363 (1926). In both of these cases the employes were awarded compensation for injuries sustained off the employer's premises because the court was satisfied that the employes were actually engaged in the furtherance of the employer's business at the time of the injury. In neither case is there any mention of a further requirement that an employe injured elsewhere than on his employer's premises must prove he was performing a special duty directed by his employer.

> In *Cronin, supra,* the Supreme Court also wrote: It must not be an act done for the mere convenience of the employee, but by order of the master, express or implied. . . .

298 Pa. at 341, 148 A. at 478.

In support of this statement, the court cited only *N. K. Fairbank Co. v. Industrial Commission*, 285 Ill. 11, 120 N.E. 457 (1918). That case involved a claim for the death of a factory worker who was occasionally required to visit other factories to obtain samples of tallow. On one such occasion, the employe had obtained a sample but he was unable to return to his employer's factory because it had closed for the day. On his way home with the sample, he was killed by a streetcar. The Illinois Supreme Court held that since the employe had completed his day's work and was on his way home, he was not in the course of his employment at the time of the injury and that he was therefore not entitled to compensation. It wrote:

> It is true that he had in his possession a small pail of tallow which it was necessary for him to deliver at the plant of plaintiff in error the next morning; but if he still retained possession of this pail at the time he was injured he did so for his own convenience, and that fact did not contribute in any way to his injury.

120 N.E. at 458.

The Illinois Supreme Court did not say, as *Cronin* implies, that the employe's engagement in work must have been by order of his master, express or implied.

The *Cronin* language that the work in which the employe is engaged off the employer's premises must have been at the employer's direction in order to be compensable was so assiduously applied thereafter that it has the earmarks of an "easily applied but unjust doctrine";[5] that is, a rule which permitted avoidance of the difficult question of law—whether the employe was actually engaged in the furtherance of the business of his employer—whenever there was no evidence that the employer directed the employe to work at the place of injury. That this might be the case is indicated by the courts' ridding themselves of what may have been the troubling phrase "or implied" from the declaration in *Cronin, supra,* that "[i]t must be an act done . . . by order of the master, express or implied. . . ." In *Ristine v. Moore,* 190 Pa. Superior Ct. 610, 155 A.2d 456 (1959), the possibility that an implied order of a master might suffice was eliminated by the announcement, without authority, that the claimant must prove "some clearcut effort on the part of the employe, requested by the employer." *Ristine v. Moore, supra,* is the case relied on by us in *Workmen's Compensation Appeal Board v. Hickory*

---

[5] *See DuBree v. Commonwealth,* Pa. , 393 A.2d 293, 296 (1978).

*Farms,* 28 Pa. Commonwealth Ct. 30, 367 A.2d 730 (1976), upon which the majority relies here.[6] It may also be that the rule of *Cronin, supra,* modified as we have seen by later Pennsylvania decisions, was seen as an advantage required to be afforded employers as a preventative against claims based on accidents away from the employer's premises only fictionally related to the claimant's employment. Whatever justification may be advanced for the rule, it is, it seems, wholly inconsistent with contemporary notions of what constitutes the required liberal construction of the Act.

In any event and however useful the rule may have been in making hard cases easy or in defeating possibly spurious claims, it has in my opinion no proper application to claims for compensation for heart attacks which employes can prove arose in the course of their employment and were related thereto. This Court has been required to consider many appeals in cases where the claims have had their bases in heart attacks sustained since 1972. Many of these records demonstrate what is common knowledge—that the actual event of a heart attack is wholly unpredictable. We cannot believe that the Legislature having made heart attacks compensable if they arise in the course of the victim's employment and are related thereto intended to impose the further limitation that, if the unpredictable event happens to occur away from the work place, the employe must additionally prove not only that he was engaged in work when stricken but that the work was being done at the request of the employer.

---

[6] The majority also relies on *LoPresti v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 7, 384 A.2d 1017 (1978) which, it is true, repeats the rule of *Ristine v. Moore* but in which we reinstated a referee's award because we concluded that the employer had indeed requested the employe to work at home.

In *Workmen's Compensation Appeal Board v. Ayers Philadelphia, Inc.,* *supra,* the employe, a 73 year old man with a history of heart trouble, died of a heart attack at his work bench while engaged in doing his usual work in the usual manner. His physician testified that the work precipitated the heart attack. His widow was awarded compensation. In this case John Krawchuk, a 52 year old professional engineer with a history of heart trouble, whose regular work was that of designing electric substations for his employer but who was also assigned as his employer's representative to a special project nationwide for the development of a means of computerizing plans for substations, died at home in the evening after working several hours on the special project. His doctor who had seen him the day before testified that John Krawchuk was then without objective symptoms of imminent difficulty but that he appeared to be tired and under stress related to his employment, particularly the special project. The physician advised Mr. Krawchuk to avoid the stress of work and Krawchuk promised that this would happen soon when the special project was completed. The physician testified that John Krawchuk's heart attack was caused by the stress of his work, at his employer's offices and at his home. The Board, affirmed by the majority here, held that because the death occurred at Krawchuk's home and because his widow failed to prove that the employer's work in which her husband was actually engaged just before he died was being done at home at the request of the employer, there can be no award to the widow. I find it impossible to believe that the Legislature intended compensation for injuries from heart attack to be so vagariously awarded or withheld as in these two cases.

Heart attacks, unlike accidents, do not just happen, they are brought about by something or a number of

things which the heart is unable to tolerate. Their timing, as we have said, is altogether uncertain. It seems to me that if a workmen's compensation claimant proves by competent medical opinion, credited by the fact-finder, that his heart attack was brought about by a thing or things arising from the course of his employment and related thereto, he has made out a case under Section 301(c) of the Pennsylvania Act regardless of where he was when the heart attack occurred. John Krawchuk's widow proved more than this; she proved that her husband was actually engaged in the furtherance of the business and affairs of his employer when he was stricken at home.

I add that disregard of the rule depended on by the majority is not without precedent. In *Feaster v. S. K. Kelso & Sons*, 22 Pa. Commonwealth Ct. 20, 347 A.2d 521 (1975), we held that a finding that an employe was directed or requested by his employer to attend a company picnic was not essential to the validity of a conclusion as a matter of law that the employe killed at the picnic was engaged in the furtherance of his employer's business or affairs.

I would reverse the Workmen's Compensation Appeal Board's order and reinstate the award to the widow.

Judge DiSalle joins in this dissent.

———

Dissenting Opinion by Judge Blatt:

The principal and determinative issue in this case is whether or not the decedent suffered an injury "arising in the course of his employment." I am convinced that he did and must, therefore, respectfully dissent.

In construing the meaning of the words "arising in the course of his employment," I would follow the approach of Professor Larson, an eminent authority in

the field of workmen's compensation law, who suggests

> a careful reading of the exact phrasing of the present coverage formula. It does not say that the injury must 'occur' or 'be manifested' or 'be consummated' in the course of employment. It merely says that it must 'arise . . . in the course of employment.' 'Arising' connotes origin, not completion or manifestation. If for example, a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result some time after working hours, the injury is routinely held compensable. (Footnote omitted.)

1A A. Larson, Workmen's Compensation Law §29.22, at 5-378 (1978). I could not agree, therefore, with the majority's statement that the ultimate issue here is ''whether the decedent's heart attack occurred while he was in the course of his employment.'' I believe that the issue is whether or not the decedent's injury *originated* in his employment, not whether or not he was actually engaged in the furtherance of his employer's business when the injury manifested itself.

I am aware, of course, of the language in Section 301 of the Act which reads:

> The term 'injury arising in the course of his employment,' as used in this article . . . shall include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere.
> . . .

I cannot agree, however, that this section excludes all off-premises injuries except those ''sustained while the employe is actually engaged in the furtherance'' of the employer's business, because I do not read ''shall include'' so as to exclude other circumstances under which an injury could occur. As *Webster's*

*Third New International Dictionary* 1143 explains, "Include . . . may call more attention to the single item or smaller class by stressing the fact of its existence or the fact of its not having been overlooked. . . ."[1] It seems to me, therefore, that the intent of this provision was to ensure that employment-related off-premises injuries are compensated and not to exclude injuries that occur under other circumstances, as in the following case described by Professor Larson:

> Claimant, a riveter, had frequent occasion to drill holes in metal, and in the course of the day, sharp, needle-pointed shavings became lodged in his hair, clothing, and eyebrows. The employer provided no place to change clothes and no facilities for removing these particles by brushes or vacuum appliances. Claimant left for home with some of these shavings still clinging to him, and when he was almost home, about 15 minutes after the close of working hours, a sharp steel sliver fell from his eyebrows into his eye causing severe injury.
>
> What can be done about a case like this? A clearer instance of an injury caused by the employment cannot be imagined. If it is noncompensable—and it was held here noncompensable—then something is basically wrong in the coverage formula.

*Larson, supra,* at 5-375-76. Yet the majority's formulation would deny benefits here because the injury was

---

[1] Note that "include" is used in this very sense in the next subsection of Section 301:

> (2) the terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, *shall include,* unless the context clearly requires otherwise, occupational disease. . . . (Emphasis added.)

Clearly, this subsection does exclude all other types of injuries; its intent is only to emphasize the inclusion of occupational disease.

not "sustained while the employe was actually engaged in the furtherance" of the employer's business.[2]

The majority concludes that the injury here did not arise in the course of the decedent's employment because he was not directed by his employer to work at home, which he was doing directly before his attack. This approach is flawed, however, not only for the reasons articulated by Judge ROGERS in his dissenting opinion, but also because it understates the logical and obvious expectations an employer normally has of a professional employee with the decedent's responsibilities. The decedent, a professional engineer, was assigned a project. Certainly he was expected to do what was necessary to complete the project and to deliver the associated paper. If this necessitated work at home after his regular hours, and if that work contributed to the stress and overexertion which precipitated his heart attack, then I think the injury arose in the course of his employment. Indeed, it is clear from the evidence and from the referee's findings that the decedent was under deadline pressure and was suffering from stress and overexertion as a result of the long hours that he devoted to his job.[3] That some of those hours were spent in his office at home and after regular hours does not, it

---

[2] In fact, however, this Court has upheld an award of compensation for a heart attack that occurred at home. *See Borough of Throop v. Workmen's Compensation Appeal Board*, 17 Pa. Commonwealth Ct. 521, 333 A.2d 481 (1975).

[3] Contrary to the majority's statement, the testimony of the decedent's fellow employe Robert J. Feik indicates that there was a deadline on the "PMS4" program relating to a "document" to be submitted to the power company management by June 1, 1973. Furthermore, the decedent was preparing a paper on the project to be delivered on May 13, 1973, which was only a few days after his death. It seems to me, therefore, that it is not quite correct to suggest that he was not under deadline pressure.

seems to me, preclude an award of benefits for the resulting fatal heart attack.

Given the evidence and findings as to the causal relationship (which the majority does not dispute)[4] and as to the arising of the injury in employment,[5] it seems to me that we should reverse the Board. Not only was its decision clearly based on the belief that the decedent's injury did not arise in the course of his employment but there is no other statutory or doctrinal obstruction to an award of benefits in this case. As a Pennsylvania legal commentator recently observed:

> [T]here is nothing in the legislation that currently exists, or in the recent decisions of the commonwealth court involving the new amendments, which precludes an award of benefits for a stress heart attack.

Quinn, *Compensability of Stress Heart Attacks in Pennsylvania,* 15 Duq. L. Rev. 37 (1976).[6]

I would conclude, therefore, that the award of compensation by the referee was supported by the evidence and consistent with the provisions of the Act to which, of course, we are bound to give a liberal construction.[7]

Judge DiSALLE joins in this dissent.

---

[4] *See* footnote 2 of the majority opinion.

[5] I do not agree with the majority that the referee's finding number 10 is actually a conclusion of law. Although its wording suggests that it might be a conclusion of law, the statement as to the source of decedent's stress and overexertion seems to me a clear finding of fact, especially when there was conflicting evidence on this issue.

[6] Many states now allow benefits for stress-induced heart attacks, and some of the cases are collected and discussed in the above-quoted article and in 1B A. Larson, *Workmen's Compensation Law* §42.21 (1978).

[7] *See Plasteel Products Corp. v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 405, 379 A.2d 908 (1977).