Ervin W. CAREY, Sr.

v.

**ELECTRIC MUTUAL LIABILITY IN-
SURANCE COMPANY and the Celi-
na Mutual Insurance Company.**

**Civ. A. No. 80–61 ERIE.**

United States District Court,
W. D. Pennsylvania.

Oct. 15, 1980.

Gary V. Skiba, Erie, Pa., for plaintiff.

Will J. Schaaf, Erie, Pa., for defendant Celina Mutual.

Donald E. Wright, Jr., Erie, Pa., for defendant Electric Mutual.

## OPINION

WEBER, Chief Judge.

This diversity case, which is now before the Court on cross–motions for summary judgment, presents a number of interesting and novel questions regarding the relationship between Pennsylvania's Workmen's Compensation Act of June 2, 1915, P.L. 736 as amended December 5, 1974, P.L. 782, 77 P.S. § 411 et seq., and its No–Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq.

There is little dispute regarding the relevant facts in this case. The plaintiff, Ervin S. Carey, Sr., was an employee of the General Electric Corporation. On the evening of April 18, 1978 the plaintiff was making deliveries for his employer in a truck owned by it. In the course of making these deliveries the plaintiff was severely injured when the truck he was operating was struck by a CONRAIL train while proceeding across a railroad crossing.

Mr. Carey subsequently filed for workmen's compensation benefits. His request was denied, however, by Electric Mutual Liability Insurance Company, the workmen's compensation carrier for General Electric. In denying this claim Electric Mutual argued that the plaintiff was not entitled to workmen's compensation benefits because, at the time of the accident, he was violating both company rules and state law and was outside the course of his employment.

Failing any resolution of this matter, the parties submitted the workmen's compensation claim to arbitration. In a decision issued on January 30, 1980 the arbitration referee found that, at the time of the accident, the railroad warning lights were operating and the crossing gates had descended. The referee further found that the plaintiff had proceeded onto the railroad crossing despite these warnings. Finally, the referee found that the plaintiff had a high blood alcohol level in his system at the time of the accident. On the basis of these findings the referee concluded that the plaintiff's injuries "were the direct result of his violation of law."

This referee's decision was subsequently appealed to the Workmen's Compensation Appeal Board. The Board remanded the decision back to the referee for further findings and clarification. At present no further action has been taken by the referee.

On April 18, 1980, the plaintiff commenced this action in Federal Court against Electric Mutual and Celina Mutual Insurance Company. In this action the plaintiff seeks No–Fault insurance benefits from both Electric Mutual, the insurer of his employer's truck, and Celina, his personal No–Fault insurance carrier. Both the plaintiff and defendant Electric Mutual have filed motions for summary judgment.

According to Rule 56(c) of the Federal Rules of Civil Procedure a summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." As previously noted, there is little dispute in this case regarding the relevant facts. Therefore, the question for our consideration is whether on the facts as stated the plaintiff is entitled as a matter of law to a judgment against either Electric Mutual or Celina. Let us begin by considering the liability of Electric Mutual.

### 1. *Electric Mutual Liability Insurance Company*

■ At the outset there is one significant hurdle which the plaintiff must meet in order to establish No–Fault Liability against Electric Mutual. That hurdle is amended Section 303 of the Pennsylvania Workmen's Compensation Act, which states that:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes (sic), his legal representative, husband or wife, parents, dependents, next–of–kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death (covered by this act.) 77 P.S. § 481(a).

By its express terms, this provision makes workmen's compensation the employee's exclusive remedy with respect to his employer. Moreover, subsequent cases interpreting this section have held that it bars an employee from seeking No–Fault benefits from the employer, *Turner v. Southeastern Pennsylvania Transportation Authority*, 256 Pa.Super. 43, 389 A.2d 591 (1978), or the employer's insurance carrier, *Wagner v. National Indemnity Co.*, —— Pa.Super. ——, 403 A.2d 118, (1979), as a result of injuries sustained in a work–related accident. Therefore, in this case, if plaintiff's injury is properly the subject of a workmen's compensation claim, then the Workmen's Compensation Act bars him from seeking any other relief through his employer, including No–Fault insurance benefits.

The plaintiff seeks to escape the effect of this provision in a number of ways. First he argues that Electric Mutual is precluded from raising this defense because at the arbitration hearing on the workmen's compensation claim it had contended that the plaintiff was not in the course of his employment at the time of the accident. Under the plaintiff's theory, since the defendant prevailed at this hearing it is now estopped from asserting that Mr. Carey was in the course of his employment when the accident occurred. Furthermore, if Mr. Carey was not within the course of his employment, then the plaintiff argues that the accident falls outside the scope of the Workmen's Compensation Act. Therefore, Section 303 of that Act, as interpreted in *Turner*, would not bar payment by the employer's insurance carrier of No–Fault benefits. See, *Gradler v. Prudential Property and Casualty Insurance Co.*, 464 F.Supp. 575, (W.D.Pa.1979).

There is, however, one problem with the plaintiff's position. It assumes that the arbitration referee found for Electric Mutual because he concluded that Mr. Carey was not within the course of his employment. Underlying this assumption is the premise that, in determining eligibility for workmen's compensation, a violation of the law is functionally the equivalent of not being within the course of employment. Yet the record of the arbitration hearing makes clear the fact that Electric Mutual raised these two issues as separate and distinct defenses. Moreover, the referee's decision itself only refers to Mr. Carey's "violation of the law" as the grounds for denying his claim. It seems therefore that there is some confusion regarding the relationship between these two defenses under the Pennsylvania Workmen's Compensation Act.

■ In this case the distinction between the defense of violation of law and that of course of employment is important for two reasons. First, that distinction may affect the applicability of the doctrine of estoppel to this case. Generally, under Pennsylvania law in order for a party to be estopped from advancing a position that party must have previously gained some advantage from asserting that position. See e. g., *Scarano v. Central Railroad Company of New Jersey*, 203 F.2d 510 (3d Cir. 1953); *Welser v. Ealer*, 317 Pa. 182, 176 A. 429 (1935). See also, 14 P.L.E. *Estoppel*, § 41, at 216 (1959). However, typically a party is not held to have gained advantage from a position unless that position is actually considered and adopted in a judicial proceeding. See, 28 Am.Jur.2d *Estoppel and Waiver*, § 70 at 698, (1966); 1B Moore's Federal Practice, ¶ 0.443(4) (1974).

For example, in *Ham v. Gouge*, 214 Pa. Super. 423, 257 A.2d 650, (1969) the Pennsylvania Superior Court refused to apply the doctrine of estoppel in a case where the defendant had previously raised but not adjudicated an inconsistent position. In that case the plaintiff, an employee of the defendant, had been injured while working on the defendant's farm. The plaintiff initially brought a workmen's compensation action against the defendant. The defendant defended on the grounds that the plaintiff was not within the course of his employment at the time of the accident. This claim and defense were never adjudicated. Subsequently, the plaintiff brought a tort action against the defendant. The defendant argued that the plaintiff's sole remedy was workmen's compensation because he was an employee when the accident occurred. The plaintiff argued that the defendant should be estopped from asserting this position by his prior inconsistent assertion in the workmen's compensation proceeding.

The Superior Court disagreed, however, holding instead that:

> All that is present here is an unadjudicated inconsistent position taken by defendants in a prior proceeding voluntarily withdrawn by plaintiff. Defendants cannot thus be estopped from asserting a position contrary to the one they never had an opportunity to prove or have adjudicated. At most, the defendants' pleadings in the prior action were admissible as admissions...."

*Id.* at 214 Pa.Super. 428, 257 A.2d 652.

■ In our case, the workmen's compensation referee simply concluded that Mr. Carey was not entitled to compensation because his injuries were caused by his own violation of the law. Therefore, if these two defenses are distinct, then in this case Electric Mutual would only be estopped from claiming that no violation of the law occurred. It would not be estopped, however, from changing its position on the question of course of employment, a defense which was not adjudicated by the referee.

The distinction between the defense of violation of law and that of course of employment is also critical because it may determine whether the plaintiff's injuries were covered by workmen's compensation at all. Since coverage under workmen's compensation is a necessary part of the *Turner* rationale, see, *Gradler v. Prudential Property and Casualty Insurance Co., supra,* the resolution of this question would, in turn, determine the plaintiff's right to No–Fault benefits.

■ In this case we feel that violation of the law and course of employment are separate and distinct defenses under Pennsylvania's Workmen's Compensation Act. Moreover, we believe that a violation of the law does not remove a claimant from the Workmen's Compensation Act but rather simply bars payment of benefits under the Act. Therefore we reject the plaintiff's estoppel agreement.

Turning initially to the text of the statute itself, we note that Section 301 of the Act describes the liability of the employer in the following terms:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employee, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained (within this act); Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employee's violation of law, but the burden of proof of such fact shall be upon the employer.... 77 P.S. § 431.

The phrase "injury in the course of employment" in turn is defined by Section 301(c) of the Act which states that:

> '(i)njury arising in the course of his employment' as used in this article shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment; but it shall include all other injuries sus-

tained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused 'by the condition of the premises or the operation of the employer's business or affairs thereon, sustained by the employee, who though not so engaged is injured on the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment. 77 P.S. § 411(1).

Therefore, the express terms of the Act itself include all work–related injuries under its provisions. The Act then seems to provide that certain classes of injury, although covered by Workmen's Compensation, are not compensable. One of these classes is injuries caused "by the employee's violation of law."

In adopting this construction of the Act we note initially that prior Pennsylvania cases have employed a similar analytical approach in interpreting other provisions of this statute. See, *Scott v. C. E. Powell Coal Company*, 402 Pa. 73, 166 A.2d 31, (1960), (Held, the loss of the senses of smell and taste in an industrial accident is exclusively covered by workmen's compensation even though these losses are not compensable under the Act.)

■ This interpretation of the Act is also supported by the way in which the burden of proof is allocated on these two defenses. Under the Workmen's Compensation Act course of employment is part of the plaintiff's prima facie case he bears the burden of proof on that issue. See e. g. *Krawchuk v. Workmen's Compensation Appeal Board*, 397 A.2d 1296, 40 Pa.Cmwlth. 591 (1979); *J. R. Hess, Inc. v. Workmen's Compensation Appeal Board*, 329 A.2d 923, 17 Pa.Cmwlth. 87 (1975). A violation of the law, however, is treated as an affirmative defense to compensation and the employer must prove such a violation in order to avoid liability.

See, 77 P.S. § 431. See also, *Kenny v. Thornton–Fuller Company*, 190 Pa.Super. 552, 155 A.2d 220 (1959). Therefore, the violation of law defense is apparently based on the assumption that the employee is covered by the act but, because of his wrongdoing, is not entitled to benefits.

The plaintiff attempts to buttress his argument on this point by contending that these two defenses have been judicially construed as functionally identical. We do not feel that the Pennsylvania cases support this construction of the Act.

Admittedly, some of the cases cited by the plaintiff do indicate that a violation of the law removes an employee from the course of his employment. See e. g. *Rich Hill Company v. Bashore*, 334 Pa. 449, 7 A.2d 302 (1939); *Shoffler v. Lehigh Valley Coal Company*, 290 Pa. 480, 139 A. 192 (1927); *Sand v. Metropolitan Life Insurance Company*, 138 Pa.Super. 218, 10 A.2d 820 (1940). Yet there is also authority for the proposition that these two defenses are separate and distinct. See e. g., *Abbotts Dairies v. Workmen's Compensation Appeal Board*, 38 Pa.Cmwlth. 423, 393 A.2d 517 (1978); *Koscavage v. Glen Alden Coal Co.*, 152 Pa.Super. 158, 31 A.2d 359 (1943); *Haywood v. Henrietta Coal Co. et al.*, 118 Pa. Super. 371, 180 A. 34 (1935).

This confusion, we believe, arises in part because frequently the actions of an employee will both violate the law and go beyond the course of employment. For example, if an employee was injured while violating both his employer's orders and state law then both defenses would be applicable. This is precisely the situation in several of the cases cited by the plaintiff. See e. g., *Shoffler v. Lehigh Valley Coal Co., supra; Walcofski v. Lehigh Valley Coal Company*, 278 Pa. 84, 122 A. 238 (1923); *Sand v. Metropolitan Life Insurance Company, supra.*[1] However, those cases which have directly confronted this question generally agree that "(w)hile an activity which is in direct violation of law may, or may

---

1. Parenthetically, we note that another case relied on by the plaintiff, *Rich Hill Company v. Bashore, supra*, involved a question unrelated to the issue of the relationship between these two defenses. Its discussion of this point therefore is merely dictum.

not, be at the same time foreign to the course of employment (*Shoffler* case, supra), such violations constitute a separate category and bar the employee's right to compensation." *Haywood v. Henrietta Coal Company, et al. supra*, 118 Pa.Super. at 377, 180 A. at 37.

We agree and hold this conclusion to be compelled both by the provisions of the Act itself and by the case law interpreting those provisions. Accordingly, we reject the plaintiff's estoppel argument in this case.

The plaintiff advances two other contentions in his motion for summary judgment against Electric Mutual. First he raises an argument based on the policy behind the Pennsylvania No–Fault Motor Vehicle Insurance Act. According to the plaintiff this policy is to insure prompt payment of benefits to the victims of automobile accident. See, 40 P.S. § 1009.102(b). Moreover, the Act itself provides that benefits be paid immediately, without deduction for other funds owed to the claimant. 40 P.S. § 1009.106(a)(3). In this case, the plaintiff argues, the best way to effectuate this statutory policy is to require immediate payment of no–fault benefits by Electric Mutual. We disagree.

The provisions of the No–Fault Act cited by the plaintiff describe the manner in which benefits which are owed to the claimant should be paid. They do not, however, define in any way the eligibility of a claimant for those benefits. Therefore, these provisions do not serve as a basis for establishing no–fault liability against Electric Mutual.

■ Finally, the plaintiff raises a constitutional challenge to this construction of the Workmen's Compensation and No–Fault Acts. Specifically, the plaintiff argues that the construction we adopt today would raise serious constitutional questions because at least some claimants would be denied any right to litigate wage loss claims.

In the scenario described by the plaintiff the claimant is denied workmen's compensation because he was not within the course of his employment. He then is barred from bringing a tort action against any third

parties because his case falls under the limited tort immunity established in the No–Fault Act. See, 40 P.S. § 1009.301. In this situation, the plaintiff argues that denial of No–Fault benefits would bar the claimant from any opportunity to recover the lost wages rightfully due him.

This argument, however, proceeds under the premise that the violation of law and course of employment defenses are functionally identical. Because we reject that premise we must also reject the plaintiff's argument.

In the situation described by the plaintiff, if workmen's compensation is denied because the claimant was not within the course of his employment then that claimant is entitled to No–Fault benefits. This is precisely the teaching of cases such as *Turner* and *Gradler*.

However, the scenario described by the plaintiff is not present in our case. Rather, our case is one in which the claimant is covered by workmen's compensation but is denied any benefits because of an affirmative defense raised by his employer, violation of the law. In such a case, denying the claimant access to his employer's no–fault insurance does not result in any injustice. The claimant has already had one opportunity to state a valid claim and has failed because of his own wrongdoing.

In fact we feel that this case amply demonstrates that an injured employee generally has a number of remedies at his disposal. For example he can claim workmen's compensation. Furthermore, he can pursue no–fault benefits, either from his employer or through his personal no–fault carrier. Finally, in many instances, he can bring a tort action against some other third party. The fact that the claimant's own wrongdoing provides an affirmative defense to many of these claims does not, in our view, render this entire remedial system subject to constitutional challenge. Accordingly, we also reject this argument.

Therefore, we hold, that the plaintiff's motion for summary judgment against defendant Electric Mutual must be denied. We further hold, that Electric Mutual's

cross motion for summary judgment must be granted.

Let us now consider the liability of the plaintiff's personal no–fault insurance carrier, Celina Mutual.

## II. *Celina Mutual Liability Insurance Company.*

The plaintiff's case for liability against Celina Mutual is premised on Section 1009.204 of the Pennsylvania No–Fault Act. According to the plaintiff, this section sets out the following priority among no–fault carriers: One, if the victim of the accident is an employee and the vehicle involved in the accident is furnished by the employer, then the employer's insurance carrier is primarily liable. See, 40 P.S. § 1009.204(a)(1). Two, if no liability can be established under 40 P.S. § 1009.204(a)(1) then the victim's personal no–fault insurance carrier shall be primarily liable. See, 40 P.S. § 1009.204(a)(2). Given these priorities, the plaintiff argues that, if this Court finds no liability against Electric Mutual, then it must find Celina, the plaintiff's personal carrier, liable. We agree. Accordingly, we grant the plaintiff's motion for summary judgment against Celina Mutual.

■ In *Gradler v. Prudential Property and Casualty Insurance Co.*, 464 F.Supp. 575 (W.D.Pa.1979) the question of priorities under Pennsylvania's No–Fault Act was directly addressed. In that case the court reviewed Sections 1009.204(a)(1) and (2) and concluded that, under this priority system, if the claimant was not covered by his employer under subparagraph (1) then the insured's personal no–fault carrier would be liable under subparagraph (2). See, *Gradler v. Prudential Property and Casualty Insurance Co.*, supra at 576.

This system of priorities under the Pennsylvania No–Fault Act has also been considered by a number of lower courts in this state. Generally their conclusions have been in accord with the position stated in *Gradler*, holding the insured's carrier primarily liable in instances where subparagraph (1) is not applicable. See *Maxwell v. Allstate Insurance Co.*, 12 Pa. D. & C.3d 78 (C.P. Allegheny County (1979); *Pennsylva-*

*nia National Mutual Casualty Insurance Co. v. J.C. Penney Insurance Co.*, 8 Pa. D. & C.3d 265 (C.P. Dauphin County 1978). But see, *Stockdill v. State Farm Mutual Automobile Insurance Co.*, 12 Pa. D. & C.3d 97 (C.P. Warren County (1979). Therefore we too adopt this interpretation as controlling in our case and hold that Celina Mutual is primarily liable to the plaintiff for no–fault benefits.

■ In its answer to the plaintiff's motion for summary judgment Celina attempts to avoid liability by relying upon *Turner* to support the proposition that workmen's compensation would be Mr. Carey's exclusive remedy in this case. We feel that such confidence is misplaced. The holding in *Turner* is quite limited. It simply held that workmen's compensation is the employee's exclusive remedy with respect to his employer. It in no way, however, precluded the plaintiff from seeking other relief through third parties. Quite the contrary, the Workmen's Compensation Act expressly allows for actions by employees against third parties. See, 77 P.S. § 481. Therefore, the rule established in *Turner* would not be applicable to this action by the plaintiff against his own insurance carrier.

Nor can Celina escape liability by arguing that summary judgment is inappropriate because the Workmen's Compensation Appeal Board has remanded the case back to the referee. We feel that Celina Mutual will remain liable to the plaintiff regardless of the actions taken by the referee on remand. In fact, the decision of the referee is only significant to the extent that it may alter the liability of Electric Mutual.

For example, let us assume that the referee's findings remain unchanged after remand. In that event Electric Mutual would not be liable for either workmen's compensation or for no–fault benefits. Therefore, in accordance with 40 P.S. § 1009.204(a)(2), primary liability would fall upon Celina.

Similarly, if the referee concluded that the plaintiff was, in fact, entitled to workmen's compensation then, under *Turner*, Electric Mutual would be excused from any

no–fault liability. In this case Celina would again be the primary no–fault carrier, although under the No–Fault Act its liability would be reduced by the extent of the claimant's recovery under workmen's compensation. See, 40 P.S. § 1009.206.

■ Finally, if the referee concluded that the plaintiff could not obtain compensation because he was not within the course of his employment then Electric Mutual would be primarily liable to the plaintiff for no–fault benefits. We are of the opinion, however, that Celina would still be liable, albeit as a secondary insurer.[2]

Simply stated, in none of these scenarios is Celina Mutual totally excused from liability. Therefore the fact that a later finding by the workmen's compensation referee might effect the exact amount of Celina's liability does not, in our view, preclude a summary judgment. Quite the contrary, the No–Fault Act expressly requires immediate payment of benefits by an insurance company without deduction for amounts owed to the claimant by others. See, 40 P.S. § 1009.106(a)(3). Moreover, the Act also provides a mechanism for the calculation of benefits which takes into account benefits owed to the claimant by third parties. See, 40 P.S. § 1009.205. Therefore, the Act, by its own terms, indicates that difficulties in determining the exact financial liability of a carrier should not serve as an excuse for non–payment of benefits.

This being the case, we hold, and so order, that the plaintiff's motion for summary judgment against defendant Celina Mutual Liability Insurance Company is granted.

### III. *Interest and Attorney's Fees.*

■ In *Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978), the Pennsylvania Superior Court held that attorneys fees could be awarded

to a claimant when a no–fault insurance carrier refused, without reasonable foundation, to pay that claimant. See, 40 P.S. § 1009.107(3). This rule has subsequently been applied in cases dealing with Section 1009.106(a) of the No–Fault Act, which imposes an 18% interest penalty on late payments of No–Fault Benefits. See, *Hayes v. Erie Insurance Exchange*, —— Pa.Super. ——, 419 A.2d 531 (1980).

The plaintiff contends in this case that it has been denied no–fault benefits without reasonable foundation. Therefore, the plaintiff argues that he is entitled to interest and attorney's fees. We disagree.

We noted at the outset of this opinion that this case presented a number of difficult and novel questions of law. In this case any determination of the liability of either defendant would require a detailed analysis of both the Workmen's Compensation Act and the No–Fault Act. Moreover, we feel that Celina Mutual could reasonably have believed that the extent of its liability could not be determined until the liability of Electric Mutual was established.

Accordingly, in a case such as this one, which involved several difficult legal issues, we feel that an award of interest and legal fees would not be appropriate. Therefore, we deny the plaintiff's request for such fees and interest.

■

---

**2.** Although we have found no Pennsylvania cases dealing with this precise issue, we note that other states have permitted no–fault claimants to receive benefits under more than one policy. See, *Wasche v. Milbank Insurance Co.* 268 N.W.2d 913 (Minn.1978). Moreover prior Pennsylvania cases have, in analogous situations, permitted claimants to "stack" automobile insurance benefits. See, *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968); *Brader v. Nationwide Mutual Insurance Co.* —— Pa.Super. ——, 411 A.2d 516 (1979), ("Stacking" permitted under the Uninsured Motorist Insurance Act). Therefore we see no reason to believe that such stacking would not be allowed under the No–Fault Act.